SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State of New Jersey v. Jamil McKinney (A-74/75-13)(073070)**
**State of New Jersey v. Al-Tariq Wardrick (A-76-13) (073078)**

**Argued January 20, 2015 -- Decided August 27, 2015**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In these consolidated appeals, the Court considers whether the jury instructions were erroneous and, if so, whether that error requires a new trial.

These consolidated appeals arise from an incident in which three armed men forced their way into the apartment in which Christopher Jones resided with his nieces, Tiara Parker and Lakesha Bella, and his nieces' friends, Shontae Lewis and Latanya Carter. Once inside, two of the intruders kicked in the door of the bedroom Lewis and Parker shared. They pointed their guns at the girls, asked where the money was, and then directed the girls into the living room. One intruder stayed with the girls, while the other two walked toward Christopher's room. Once inside, the men demanded his money and jewelry. When Christopher told them he had neither, one of the assailants started tussling with him. The struggle ended when one of the attackers hit Christopher in the head with his gun. Christopher's brother, Melvin Jones, who also lived in the building, was awakened by the commotion. He came out of his apartment to investigate, but was confronted by several people standing in the hallway. One of the attackers pointed a gun at Melvin and ordered him back inside. Melvin returned to his apartment, called the police, and gave the dispatcher a description of the armed men. Several officers responded to the scene and pursued men who matched the description. After apprehending the suspects, the officers transported the men back to the scene of the home invasion for identification. Melvin identified the detained suspects, Al-Tariq Wardrick and Jamil McKinney (together defendants), as two of the three intruders.

Defendants were charged in a seventeen-count indictment and tried jointly by a jury. At trial, all counsel and the court agreed that the jury would not consider any lesser-included offenses of first-degree robbery. However, during its instructions to the jury, the court stated the following: "If you find that the State has proven beyond a reasonable doubt that [defendants] committed the crime of robbery as I have defined the crime to you, but if you find that the State has not proven beyond a reasonable doubt that [defendants] were armed with or used or purposely threatened the immediate use of a deadly weapon at the time of the commission of the robbery, then you must find [defendants] guilty of robbery in the second degree." Realizing its error, the court then stated, "I think I indicated that – a portion of the charge that referred to robbery of the second degree. There is no charge of robbery of the second degree. So that part is omitted." Later, in the course of instructing the jury on first-degree robbery, the court mentioned second-degree robbery again. The jury ultimately found both men guilty of multiple offenses, including second-degree conspiracy to commit robbery (count one), first-degree robbery (count two), and second-degree burglary (count fourteen).

Defendants subsequently filed separate appeals that were neither consolidated nor calendared back-to-back. One panel of the Appellate Division (the McKinney panel) held that the first-degree robbery instructions contained errors that had the clear capacity to produce an unjust result and, therefore, reversed McKinney's conviction for first-degree robbery and remanded for a new trial on that count. The Court subsequently granted certification. 217 N.J. 291 (2014). A different Appellate Division panel (the Wardrick panel) held that the charge was erroneous, but that the error was harmless, as there was sufficient evidence from which a jury could have found that, in the course of committing a theft, defendant was armed with a deadly weapon. In December 2012, Wardrick petitioned the panel to reconsider his appeal in light of the outcome of McKinney's appeal. He argued that the same infirmity in the robbery charge impacted his trial and required reversal. On reconsideration, the Appellate Division again affirmed his conviction. The Court subsequently granted certification limited to whether: 1) the Appellate Division erred in affirming defendant's conviction in light of another panel's reversal of his co-defendant's conviction arising out of the same trial and alleged error; and 2) whether the trial court erred in failing to set aside defendant's conviction for first-degree robbery. 217 N.J. 293 (2014).

**HELD**: The trial court's references to second-degree robbery in the course of the jury instructions were erroneous. Its subsequent efforts to cure the error were confusing and ineffective. Thus, the instruction constituted reversible error. The judgment of the Appellate Division in State v. Wardrick is reversed as to his conviction for first-degree robbery, and the matter is remanded to the trial court for proceedings consistent with this opinion. The judgment is

affirmed in all other respects. The judgment of the Appellate Division in State v. McKinney is affirmed.

1. Defendants did not object to the jury charge at trial. Therefore, the Court reviews the charge for plain error. To warrant reversal, the error must be clearly capable of producing an unjust result. The Court must not look at portions of the charge alleged to be erroneous in isolation, but should examine the charge as a whole to determine its overall effect. In a case where, as here, the State argues that the error is harmless because the trial judge correctly instructed the jury in other components of the charge, the test is whether the charge accurately sets forth the controlling principles of law. Trial judges are encouraged to correct errors that occur during trial. A curative jury instruction is one method to remedy trial error and is sometimes required to address testimony that should not have been heard by the jury. (pp. 23-27)

2. Here, defendants were found guilty by the same jury, based on the same evidence, but received disparate results on appeal. That can be explained, in part, by the failure to assign both defendants' appeals to the same Appellate Division panel. The results may also be explained by Wardrick's failure to argue, until he learned of the disposition of McKinney's appeal, that the first-degree robbery charge was erroneous. It was in the context of resolving Wardrick's motion for reconsideration that the Wardrick panel declined to invoke the law of the case doctrine, conducted a full review of the first-degree robbery charge, and concluded that any error was harmless. The Wardrick panel correctly declined to apply the law of the case doctrine with respect to the asserted error. That ruling is consistent with the Court's recent opinion in State v. K.P.S., 221 N.J. 266 (2015), which held that due process dictates that each defendant is entitled to a full and fair review of any order, judgment, or verdict without regard to the disposition of an appeal filed by another defendant in the same proceeding who happened to receive a decision before his co-defendants. (pp. 28-29)

3. Here, the parties and trial court agreed that the jury would not be instructed that it could consider second-degree robbery as a lesser-included offense. Therefore, the court was obliged to fashion a charge that contained the essential elements of the first-degree robbery offense with no mention of second-degree robbery. That is not what occurred. Compounding the error, the court did not provide an adequate curative instruction and delivered confusing directions regarding the circumstances that required a guilty or not guilty verdict. The court's initial error demanded a more thorough and pointed curative instruction. The court's reference to second-degree robbery in the charge, and its failure to adequately resolve that confusion, had the clear capacity to permit defendants to be found guilty of first-degree robbery without a finding that they were armed. Therefore, a new trial is required for both defendants on the first-degree robbery count. (pp. 29-30)

4. The Court has approved of jury instructions that simply state that the jury must find that the State has proven each element of the offense beyond a reasonable doubt in order to find a defendant guilty. The better practice, however, is for the court specifically to inform the jury that it must find the defendant not guilty if it fails to find any element beyond a reasonable doubt. Here, the trial court's reference to second-degree robbery was erroneous and the court's efforts to fix the error were confusing. Thus, the instruction constituted reversible error. (pp. 31-36)

The judgment of the Appellate Division in State v. Wardrick is **AFFIRMED** in part and **REVERSED** in part. The matter is **REMANDED** to the trial court for proceedings consistent with this opinion. The judgment of the Appellate Division in State v. McKinney is **AFFIRMED**.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUDGE CUFF's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant
    and Cross-Respondent,

        v.

JAMIL MCKINNEY, a/k/a JAMEEL
MCKINNEY, HAKIM MCKINNEY,
MALIK HOWARD and JAMIL
WARDRICK,

    Defendant-Respondent
    and Cross-Appellant.

_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

        v.

AL-TARIQ WARDRICK,

    Defendant-Appellant.

        Argued January 20, 2015 – Decided August 27, 2015

        On certification to the Superior Court,
        Appellate Division.

        Lucille M. Rosano, Special Deputy Attorney
        General/Acting Assistant Prosecutor, argued
        the cause for appellant and cross-respondent
        State of New Jersey in State v. Jamil
        McKinney and respondent in State v. Al-Tariq
        Wardrick (Carolyn A. Murray, Acting Essex
        County Prosecutor, attorney).

Michele A. Adubato, Designated Counsel, argued the cause for appellant Al-Tariq Wardrick (Joseph E. Krakora, Public Defender, attorney; Ms. Adubato and Alison S. Perrone, Designated Counsel, on the briefs).

Stephen W. Kirsch, Assistant Deputy Public Defender, argued the cause for respondent and cross-appellant Jamil McKinney (Joseph E. Krakora, Public Defender, attorney).

Sarah E. Ross, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (John J. Hoffman, Acting Attorney General, attorney).

JUDGE CUFF (temporarily assigned) delivered the opinion of the Court.

These consolidated appeals arise from an intrusion into an apartment by three armed men. Al-Tariq Wardrick and Jamil McKinney (together defendants) were identified as two of the three intruders and were charged in a seventeen-count indictment. Wardrick and McKinney were tried together by a jury and convicted of several offenses, including first-degree robbery and second-degree burglary. Each defendant appealed his conviction. Normally, their appeals would have been assigned to the same part of the Appellate Division and likely scheduled on the same calendar. That did not occur.

One panel of the Appellate Division held that the first-degree robbery charge contained errors that had the clear

capacity to produce an unjust result and reversed McKinney's conviction. The other panel of the Appellate Division held that the charge was erroneous but that the error was harmless. The panel affirmed Wardrick's conviction.

Wardrick urges this Court to apply the law of the case doctrine based on the earlier judgment of the Appellate Division. We recently addressed this very issue in State v. K.P.S., 221 N.J. 266 (2015), holding that the doctrine has little, if any, applicability in a criminal, appellate setting. Indeed, we held that to apply the doctrine to a subsequent appeal by a co-defendant who was tried before the same jury or whose pretrial motion was adjudicated by the same judge in a single proceeding would contravene the due process rights of the subsequent defendant.

As to the merits, we agree that the first-degree robbery jury instruction was erroneous and that the error requires a new trial on the first-degree robbery charge. Although the trial court concurred in the position advanced by all counsel that second-degree robbery should not be submitted to the jury as a lesser-included offense of first-degree robbery, the trial court improperly injected second-degree robbery as an alternative outcome twice and provided an inadequate curative instruction on both occasions. Having informed the jury that it should convict defendants of second-degree robbery if it found that they were

not armed and having informed the jury that it should disregard the reference to second-degree robbery, the trial court was obliged to instruct the jury that it must find defendants not guilty of first-degree robbery if it found that they were not armed at the time they committed a robbery. The trial court did not do so. Therefore, affirm the judgment of the Appellate Division in State v. McKinney. We reverse the judgment of the Appellate Division in State v. Wardrick as to his conviction for first-degree robbery. The judgment is affirmed in all other respects.

I.

A.

The following facts are derived from the trial record. At approximately 1:30 a.m. on April 9, 2007, three armed men forcibly entered a second-floor Newark apartment, where Christopher Jones[1] resided with his two nieces, Tiara Parker and Lakesha Bella, and his nieces' friends, Shontae Lewis and Latanya Carter. Two of the men kicked in the door of the bedroom shared by Lewis and Parker. They pointed guns at the girls, asked where the money was, and then directed the young women into the living room. One of the men stayed with the girls, while the other, joined by a third intruder, walked

---

[1] Because Christopher Jones shares the same surname as his brother, Melvin Jones, we refer to both by their first names.

4

toward Christopher's bedroom.  At trial, neither Lewis nor Parker could identify the men.  They recalled, however, that one of the men wore a white t-shirt and had a silver automatic handgun, while the other two had black handguns.  Lewis also recalled that the men wore jeans and that one wore a black shirt.

Two of the intruders entered Christopher's bedroom.  They brandished weapons and demanded money and jewelry; Christopher responded that he had neither.  One of the intruders grabbed Christopher, and a "tussle" ensued.  The struggle ended when one of the men struck Christopher in the head with a gun.  Both intruders then left.

Christopher's brother, Melvin, who lived in an apartment on the first floor of the building, was awoken by the commotion. He got dressed and exited his apartment, intending to head up the stairs to his brother's apartment, but was confronted by several people standing in the hallway.  One man pointed a gun at Melvin and told him to go back inside.  He returned to his apartment and contacted the police.  Melvin told the dispatcher that the man who had pointed the gun at him was wearing a gray sweatshirt, gray jeans, and a do-rag or dark stocking cap; he described one of the other intruders, also armed, as a "short stocky guy with dreads."

5

Christopher was taken by ambulance to the hospital, where he received eighteen staples in the side of his head. Christopher reported that the men stole his wallet, watch, and his mother's car keys. Those items, as well as Lewis's purse, were never recovered.

Officer Lawrence Brown and his partner, Officer Orlando Andujar, were the first to arrive at the scene. As Officer Brown approached the area, he saw a "dark-colored vehicle speeding" away from the house. He then noticed "two males run across the street directly in front of [him] from the location, one with a ski mask on and both with handguns in their hands." Officer Brown got out of the police vehicle and chased after the suspects. During the pursuit, Officer Brown saw the individuals toss away what he believed to be guns and a ski mask. The suspects then jumped over a fence and into the next yard. Officer Brown told the dispatcher the direction in which the suspects were heading. He remained in the yard and searched the area with his flashlight, eventually finding two guns and a ski mask.

Several other officers continued the foot pursuit. One of the suspects was apprehended after becoming entangled in barbed-wire fencing; the other was seen climbing through the window of a nearby dwelling. Two officers followed the suspect into the

building.  They apprehended the individual, who was "crouched down at the top of the stairwell."

The police officers transported the two men back to the scene of the home invasion in separate patrol cars for a "show-up" identification.  Christopher was unable to identify the intruders because they were wearing masks.  Melvin identified the detained suspects as the intruders; he told police they were known as "Homey" and "Rico."  Christopher later provided a photo identification of Wardrick.

An Essex County grand jury returned a seventeen-count indictment.  Both defendants were charged with the following: second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and 2C:15-1 (count one); first-degree robbery of Christopher Jones and Shontae Lewis, N.J.S.A. 2C:15-1 (counts two and six); second-degree aggravated assault of Christopher Jones, N.J.S.A. 2C:12-1(b) (count three); third-degree unlawful possession of a weapon (handgun), N.J.S.A. 2C:39-5(b) (counts four and nine); third-degree possession of a weapon (handgun) for an unlawful purpose, N.J.S.A. 2C:39-4(a) (counts five, ten, and thirteen); third-degree terroristic threats to Shontae Lewis and Tiara Parker, N.J.S.A. 2C:12-3(a) (counts seven and eleven); fourth-degree aggravated assault of Shontae Lewis and Tiara Parker, N.J.S.A. 2C:12-1(b)(4) (counts eight and twelve); and second-degree burglary, N.J.S.A. 2C:39-4 (count fourteen).  McKinney

7

was also charged with fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a) (count sixteen). Wardrick also was charged with fourth-degree criminal trespass, N.J.S.A. 2C:18-3 (count fifteen), and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a) (count seventeen).

At trial, neither Lewis nor Parker could identify defendants as the intruders. However, they did describe the clothing worn by their assailants. Christopher disavowed his prior statement to police. He explained that he did not clearly see the intruders because he was "tussling" with one of the men. He also stated that he had been released from the hospital just before the photo identification procedure.

Melvin also recanted his earlier statement to police. That statement, which identified Wardrick and McKinney by their street names, was admitted at trial following a Gross[2] hearing. However, Melvin confirmed that Wardrick and McKinney were the men in the police car at the time of the show-up procedure.

Forensic experts and several police officers, who responded to the 9-1-1 call and participated in the pursuit, also testified. Their testimony established that the handgun that had been possessed by McKinney and recovered by Officer Brown bore Christopher's DNA. The ski mask recovered in the yard was

---

[2] State v. Gross, 121 N.J. 1 (1990).

8

tested for hair, skin, and saliva, resulting in a match to a DNA sample taken from McKinney.

B.

Wardrick and McKinney were tried by a jury together, commencing in February 2009. At trial, all counsel agreed that the jury would not consider any lesser-included offenses for first-degree robbery.

The trial court provided the following instruction on first-degree robbery within the context of charging the jury on both conspiracy to commit first-degree robbery (count one) and first-degree robbery of Christopher (count two):

> In order for you to find [defendants] guilty of robbery, <u>the State is required to prove each of the following elements beyond a reasonable doubt: [t]hat [defendants] were in the course of committing a theft; that while in the course of committing that theft, [defendants] knowingly inflicted bodily injury or the use of force upon another; or B, threatened another with or purposely put him in fear of immediate bodily injury.</u>

[(Emphasis added).]

The court then instructed the jury as follows:

> In this case, it is alleged that [defendants] were armed with, used or threatened the immediate use of a deadly weapon while in the course of committing the robbery.
>
> . . . .
>
> In this case the State alleges that [defendants] were armed with a handgun. You

9

must determine if this object qualifies as a deadly weapon, and if the State has proven, beyond a reasonable doubt, that defendant used in the course of committing this robbery.

. . . .

To summarize, if you find that the State has not proven beyond a reasonable doubt any one of the elements of the crime of robbery as I have defined that crime to you, then you must find [defendants] not guilty.

If you find that the State has proven beyond a reasonable doubt that [defendants] committed the crime of robbery as I have defined the crime to you, but if you find that the State has not proven beyond a reasonable doubt that [defendants] were armed with or used or purposely threatened the immediate use of a deadly weapon at the time of the commission of the robbery, then you must find [defendants] guilty of robbery of the second degree.

If you find that the State has proven beyond a reasonable doubt that the defendant committed the crime of robbery and was armed with a deadly weapon or used or threats of the immediate use of the deadly weapon at the time of the commission of the robbery, then you must find [defendants] guilty of robbery in the first degree.

[(Emphasis added).]

Thereafter, the court stated: "I think I indicated that -- a portion of the charge that referred to robbery of the second degree. There is no charge of robbery of the second degree. So that part is omitted."

Later, in the course of instructing the jury on count six, first-degree robbery, the trial court again referenced second-

10

degree robbery.  That reference occurred as the trial court instructed the jury about the consequences of finding that the State did not prove each required element of first-degree robbery.

The jury ultimately found both McKinney and Wardrick guilty of second-degree conspiracy (count one), first-degree robbery of Christopher Jones (count two), and second-degree burglary (count fourteen).  The jury found McKinney guilty of resisting arrest (count sixteen), and Wardrick guilty of criminal trespass (count fifteen) and resisting arrest (count seventeen).  Both defendants were acquitted of aggravated assault (count three). The jury could not reach a verdict on the weapons charges or the other remaining counts.

A sentencing proceeding for Wardrick took place on May 11, 2009.  The court merged count one (conspiracy to commit first-degree robbery) into count two (first-degree robbery of Christopher), and imposed a fifteen-year term of imprisonment on count two, subject to an eighty-five percent parole disqualifier pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The court also imposed concurrent sentences of eight years of imprisonment on count fourteen (second-degree burglary), eighteen months on count fifteen (fourth-degree criminal trespass), and eighteen months on count seventeen (fourth-degree resisting arrest).

McKinney was sentenced on May 29, 2009. The court merged count one into count two, and imposed an eighteen-year term of imprisonment on count two, subject to NERA. The court also sentenced McKinney to a concurrent ten-year term of imprisonment subject to NERA on count fourteen, and a concurrent eighteen-month term of imprisonment on count sixteen.

Defendants filed separate appeals that were neither consolidated nor calendared back-to-back.

## II.

### A.

On appeal, McKinney argued, among other things, that "the jury instructions on armed robbery and armed burglary were confusing and incorrect, particularly in a case where, as here, the jury had difficulty determining the defendant's guilt o[n] the weapons offenses in the indictment."

The Appellate Division (the McKinney panel) concluded that "there was reversible error in the first-degree robbery charge." The appellate court concluded that the trial court "should have, but did not, instruct the jury that they should acquit defendant of armed robbery if they found the elements of unarmed robbery but had doubt about the armed element." The panel further noted that "[t]he jury clearly did not agree on whether defendant was armed, as it reached no verdict on the weapons counts, but apparently believed that they should nonetheless convict him

12

based on the unarmed elements of robbery." On that basis, the panel reversed defendant's first-degree robbery conviction and remanded for a new trial on that count. The Appellate Division however affirmed the second-degree burglary conviction, stating that it was "satisfied that the re-instruction sufficiently cured any confusion that the first instruction may have caused." The State filed a petition for certification. This Court granted certification on March 17, 2014. 217 N.J. 293 (2014).

B.

On appeal, Wardrick argued that the trial court erred in denying his motion to set aside the conviction for first-degree robbery based on the inconsistency of the jury's verdicts. A different panel of the Appellate Division (the Wardrick panel) affirmed his conviction, stating that inconsistent verdicts have long been accepted within our criminal justice system, (citing State v. Banko, 182 N.J. 44, 53 (2004)), so long as there is sufficient evidence in the record for the charges. Because the jury could not reach a verdict and defendant was therefore not acquitted of the weapons offenses, the appellate panel concluded that an analysis of the verdict was not warranted. The panel remarked, "'[T]he fact that a jury [is unable to reach a verdict] is evidence of nothing -- other than, of course, that it has failed to decide anything.'" (Alterations in original) (quoting Yeager v. United States, 557 U.S. 110, 125, 129 S. Ct.

13

2360, 2370, 174 L. Ed. 2d 78, 90 (2009)).  The panel recounted the evidence presented with regard to the weapons charges and suggested several reasonable explanations for the inconsistencies.

The Wardrick panel was "satisfied [that] there was sufficient evidence from which a jury could have found that in the course of committing a theft, defendant was armed with a deadly weapon."  The panel noted that it is impermissible speculation to analyze why the verdicts were inconsistent, and that, in and of itself, an inconsistent verdict is insufficient to require reversal.

In December 2012, Wardrick petitioned the Wardrick panel to reconsider his appeal in light of the outcome of co-defendant McKinney's appeal.  He argued that the same infirmity in the robbery charge impacted his trial and required reversal.  The Appellate Division granted his motion for reconsideration. On reconsideration, the Wardrick panel again affirmed Wardrick's conviction.  It disagreed with the McKinney panel's conclusion that the jury believed it could convict McKinney of first-degree robbery if he was unarmed.  The Wardrick panel also noted that "the decision of one co-equal court is not binding upon another co-equal court."  Wardrick filed a petition for certification. On March 17, 2014, this Court granted certification limited to the issues of whether: "1) the Appellate Division erred in

14

affirming defendant's conviction in light of another panel's reversal of his co-defendant's conviction arising out of the same trial and alleged error; and 2) whether the trial court erred in failing to set aside defendant's conviction for first-degree robbery." 217 N.J. 291 (2014).

III.

A.

McKinney argues that the appellate panel correctly determined that the armed-robbery instruction constituted reversible error, as it "fail[ed] in the most basic ways to inform jurors that they must acquit for armed robbery if [they had] a doubt about the armed element." According to McKinney, the instruction was "structured in a way that had the clear capacity to result in a verdict for armed robbery consisting only of jury findings of the elements of unarmed robbery, an intolerable result."

B.

Wardrick similarly argues that the jury instruction constituted reversible error, as it did not properly instruct the jury that it must unanimously agree, beyond a reasonable doubt, that defendants were armed when they committed the offense. Wardrick contends that, because the jury did not find defendants guilty of the weapons charges, "there was a viable

15

question as to whether all the jurors found the armed element of robbery." According to Wardrick, the discrepancy may have stemmed from jury confusion due to the erroneous instruction; indeed, the jurors should have been informed that they must acquit defendants of first-degree robbery if they were not unanimously convinced that defendants were armed.

Wardrick also argues that, under the law of the case doctrine, the Wardrick panel, in reviewing his motion for reconsideration, erred in affirming his conviction in light of the Appellate Division's disposition of McKinney's appeal. Wardrick urges that his "right to a fair trial . . . was just as prejudiced as Mr. McKinney['s] by that erroneous instruction."

According to Wardrick, the law of the case doctrine "[e]nsures uniformity of decisions, and protects the expectations of the parties"; thus, "'when an issue is once litigated and decided during the course of a particular case, that decision should be the end of the matter,'" (quoting State v. Hale, 127 N.J. Super. 407, 410 (App. Div. 1974)). Wardrick argues that, once the McKinney panel ruled on the issue, the "Wardrick panel could not independently consider the issues on appeal. . . . The fact [that] the second panel 'disagreed' with the first panel was immaterial and provided no basis not to apply the law of the case doctrine."

16

In support of his argument, Wardrick cites to State v. Ellis, 969 P.2d 1053 (Utah Ct. App. 1998), in which the Utah Court of Appeals applied the law of the case doctrine to a co-defendant's proceeding under a separate appeal. Wardrick also cites cases in Florida, Alaska, and Iowa, where, according to Wardrick, the courts applied the law of the case doctrine, even for issues "not explicitly discussed in the first appellate opinion," and regardless of whether those prior decisions were right or wrong. (Citing Sanders v. State, 689 So.2d 410 (Fla. Dist. Ct. App. 1997); Wolfe v. Arctic Bowl, Inc., 560 P.2d 758, 763 (Alaska 1977); State ex. rel. Goettsch v. Diacide Distribs., Inc., 596 N.W.2d 532, 537 (Iowa 1999)).

## C.

The State contends that defendants cannot meet the plain error standard, as any error in the charge is harmless beyond a reasonable doubt when considered in the context of the entire charge and the overwhelming evidence against defendants. Thus, the State requests that the Court affirm the Wardrick panel's decision, reverse the McKinney panel's decision, and reinstate McKinney's conviction for first-degree robbery.

The State argues that the trial court's instructions "were complete and unambiguous, charging on all elements of each respective offense, and instructing on the fundamental principles of law that controlled the case." According to the

17

State, the robbery charge "complied with the Model Criminal Jury Charge on robbery in the first-degree." The State contends that despite the misstatement, the court clearly outlined the complete charge for first-degree robbery. When the judge misspoke, the State asserts that she promptly informed the jury of the error and offered a curative instruction, which did not confuse or impair the instruction as a whole. According to the State, the fact that neither trial counsel objected to the charge leads to the presumption that counsel did not believe the charge was incorrect or confusing. The State further points out that the jury sheet listed only first-degree robbery under count two.

The State argues that the McKinney panel gave too much weight to the inconsistent verdict, ignoring the fact that "well-established legal principles" permit a jury to render inconsistent verdicts as long as each charge is supported by sufficient evidence in the record. According to the State, the evidence in the present case "amply supported the first-degree robbery convictions." Furthermore, the State contends that there are many potential explanations for why the jury was unable to reach a decision regarding the weapons charges; yet,

under the "Dunn/Powell[3] rule," the court should not engage in "pure speculation" to investigate the verdict.

The State also asserts that the law of the case doctrine "directs discretion, but does not compel submission." According to the State, one appellate panel is permitted to disagree with the legal or factual conclusions of another, as the Appellate Division is bound only by the decisions of this Court. The State maintains that the Wardrick panel properly considered and "gave due deference" to the McKinney panel's conclusion but nonetheless reached a different result.

Furthermore, the State submits that the law of the case doctrine is inapplicable here because the two appeals were "pending at the same time." Thus, "the Wardrick panel was not being asked to reconsider the same issue in a subsequent appeal."

D.

The Attorney General of New Jersey, appearing as amicus curiae, urges the Court to reverse the judgment of the McKinney panel and reinstate the conviction, and to affirm the judgment of the Wardrick panel.

---

[3] Dunn v. United States, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932); United States v. Powell, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984).

19

Amicus states that judges frequently misspeak when administering jury charges but are "permitted to correct the mistake without jeopardizing the entire trial." Amicus warns that it would simply be untenable for the courts to permit reversal every time a judge misspeaks.

Amicus asserts that the jury instructions in this case did not create reversible error, as the trial court "correctly instructed the jury on the controlling law." According to amicus, when read in context, the trial judge's "minor, immediately self-corrected mistake . . . could not have substantially prejudiced defendants." Amicus argues that, by disregarding the curative statement, the McKinney panel "essentially raised a misstatement to the level of per se reversible error that cannot be corrected." The Attorney General further points out that defense counsel had multiple opportunities to object to the charge; the co-defendants "should not be rewarded for allowing an instruction to go to the jury and then, once convicted, using the instruction as ammunition on appeal."

Amicus contends that the McKinney panel's analysis of the inconsistent verdicts involved "improper speculation." According to amicus, inconsistent verdicts are acceptable and non-reviewable so long as there is sufficient evidence in the record to support the conviction. The Attorney General urges

20

that, in this case, the record contained "more than sufficient evidence" to support the conviction of first-degree robbery.

Addressing Wardrick's appeal, amicus contends that the appellate panel appropriately disagreed with the McKinney panel. The Attorney General submits that, although Appellate Division opinions are binding on the lower courts, they are not binding on other appellate panels; this principle is particularly true when the previous decision "is erroneous and results in injustice." The Attorney General urges that the law of the case doctrine should be applied flexibly so as to "'balance the value of judicial deference for the rulings of a coordinate judge against those factors that bear on the pursuit of justice and, particularly, the search for truth.'" (Quoting Lombardi v. Masso, 207 N.J. 517, 538-39 (2011)).

The Attorney General argues that although it is unusual for different appellate panels to hear cases involving co-defendants, it "does not mean . . . that the decision of the panel that was released first controls." According to amicus, the Wardrick panel gave "due consideration to the decision of its sister panel" and articulated specific reasons why it disagreed with the McKinney panel's decision.

IV.

A.

21

Earlier this term, in K.P.S., supra, the Court addressed the application of the law of the case doctrine in the context of appellate review of a criminal case. 221 N.J. at 270. We concluded that the doctrine had little, if any, vitality in that context and disapproved the invocation of the doctrine to resolve a criminal appeal. Ibid.

In K.P.S., police executed a series of searches of one person's home. Id. at 271. Three persons were charged in an indictment with numerous counts of aggravated sexual assault based on evidence seized during those searches. Ibid. The three co-defendants filed a joint motion to suppress. Ibid. Each claimed that the searches violated their federal and state constitutional rights. Ibid. Following an evidentiary hearing, the trial court denied the joint motion. Id. at 272.

Thereafter, each defendant entered a plea agreement and pled guilty. Id. at 272-73. After sentencing, the three defendants appealed their sentences and the denial of their motions to suppress. Id. at 273. One defendant's appeal was heard by a panel of the Appellate Division, which affirmed the order denying the motion to suppress in an unpublished opinion issued in 2011. Ibid. Two years later, a different panel addressed the appeal by the two other defendants, who raised essentially the same issues as the other defendant. Id. at 274. The second panel affirmed the order denying the motions to

22

suppress; in doing so it invoked the law of the case doctrine to preclude review of the same issues raised by their co-defendant and decided in his appeal. Ibid.

In its review of the appeal decided second, the Court recognized that the principles underlying the law of the case doctrine and collateral estoppel are similar. Id. at 277. We emphasized that "[a] fundamental tenet of collateral estoppel is that the doctrine cannot be used against a party unless that party either participated in or was 'in privity with a party to the earlier proceeding.'" Ibid. (quoting In re Estate of Dawson, 136 N.J. 1, 20 (1994)). That tenet prohibits application of collateral estoppel if a party has not had a "'full and fair opportunity to litigate an issue.'" Id. at 278 (quoting Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 337 (1996)). Similarly, the law of the case doctrine cannot bar a defendant from a full and fair opportunity for appellate review of an order adjudicating a motion or other application simply because another party received a ruling on similar issues based on the same record. Id. at 279-80.

The Court emphasized in K.P.S. that application of the law of the case doctrine in appellate proceedings conflicts with a defendant's due process rights. Id. at 279. Those rights can only be satisfied if each defendant receives a full and fair

23

review of his or her appeal to set aside an order or a verdict. Id. at 279-80.

B.

McKinney and Wardrick did not object to the jury instruction at trial; the Court reviews the charge for plain error. R. 1:7-2; R. 2:10-2; see also State v. Singleton, 211 N.J. 157, 182 (2012). To warrant reversal, the error must be "clearly capable of producing an unjust result." R. 2:10-2. We have established that

> [i]n the context of jury instructions, plain error is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result."
>
> [State v. Camacho, 218 N.J. 533, 554 (2014) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).]

The Court must not look at portions of the charge alleged to be erroneous in isolation; rather, "'the charge should be examined as a whole to determine its overall effect,'" State v. Jordan, 147 N.J. 409, 422 (1997) (quoting State v. Wilbely, 63 N.J. 420, 422 (1973)), and "whether the challenged language was misleading or ambiguous," State v. Nelson, 173 N.J. 417, 447 (2002) (citing State v. Simon, 161 N.J. 416, 477 (1999)); see

24

also State v. Torres, 183 N.J. 554, 564 (2005); Wilbely, supra, 63 N.J. at 422.

"An essential ingredient of a fair trial is that a jury receive adequate and understandable instructions." State v. Afanador, 151 N.J. 41, 54 (1997) (citing State v. Martin, 119 N.J. 2, 15 (1990)). "Appropriate and proper jury instructions are essential to a fair trial." State v. Green, 86 N.J. 281, 287 (1981) (citing Gabriel v. Auf Der Heide-Aragona, Inc., 14 N.J. Super. 558, 563-64 (App. Div. 1951)). Jury instructions have been described as "a road map to guide the jury[;] without an appropriate charge, a jury can take a wrong turn in its deliberations." Martin, supra, 119 N.J. at 15.

The trial court has clear directives with regard to what must be included in the charge. The judge "should explain to the jury in an understandable fashion its function in relation to the legal issues involved." Green, supra, 86 N.J. at 287 (citing Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-92 (1966)). The trial judge must deliver "a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." Id. at 287-88. The trial judge must "instruct the jury as to the fundamental principles of law which control the case [including] the definition of the crime, the commission of which is basic to the prosecution against the defendant."

Id. at 288 (quoting State v. Butler, 27 N.J. 560, 595-96 (1958)).

"Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." State v. Bunch, 180 N.J. 534, 541-42 (2004) (quoting Nelson, supra, 173 N.J. at 446); see also Jordan, supra, 147 N.J. at 422 (finding that some jury instructions are "so crucial to the jury's deliberations on the guilt of a criminal defendant that errors in those instructions are presumed to be reversible"). Therefore, "[e]rroneous instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error." Afanador, supra, 151 N.J. at 54 (citing State v. Brown, 138 N.J. 481, 522 (1994)). "This requirement of a charge on a fundamental matter is more critical in a criminal case when a person's liberty is at stake." Green, supra, 86 N.J. at 289.

In a case where, as here, the State argues that the error is harmless because the trial judge correctly instructed the jury in other components of the charge, "[t]he test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law." State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997) (alteration in original) (quoting State v. Sette, 259 N.J.

26

Super. 156, 190-91 (App. Div.), certif. denied, 130 N.J. 597 (1992)), certif. denied, 153 N.J. 49 (1998).  "[T]he key to finding harmless error in such cases is the isolated nature of the transgression and the fact that a correct definition of the law on the same charge is found elsewhere in the court's instructions."  Ibid.

In Jackmon, supra, the defendant argued that the trial judge incorrectly charged the jury on accomplice liability because the judge did not clearly distinguish the intent required for the grades of the offense.  305 N.J. Super. at 284-85.  Additionally, the defendant alleged that the trial judge did not clearly establish that an attempt requires a purposeful mens rea, even if another mental state could establish the underlying crime.  Id. at 298.  The panel found reversible error because the critical portions of the charge were not merely "fleeting reference[s]" and "the entire charge was lengthy and somewhat confusing."  Id. at 300.

Conversely, in State v. Smith, the panel concluded that the judge "fully and accurately instructed the jury on the elements of attempt" even though the instruction was given "during an explanation of the law relating to another offense."  322 N.J. Super. 385, 399 (App. Div.), certif. denied, 162 N.J. 489 (1999).  The Appellate Division held that, based on the defendant's testimony, the overwhelming evidence that

27

established his guilt, and the "appearance elsewhere in the jury instructions of a proper charge[,] . . . the failure to define attempt in the robbery charge did not prejudice defendant's rights." Id. at 400.

A trial judge is permitted and encouraged to correct errors that occur during trial. A curative jury instruction is one method to remedy trial error, and is sometimes required to address testimony that should not have been heard by the jury, see Verdicchio v. Ricca, 179 N.J. 1, 36 (2004), or to address erroneous statements by attorneys in their closing arguments, see Bender v. Adelson, 187 N.J. 411, 436-37 (2006). In those contexts, the decision to provide a curative instruction and the content of that statement is left to the discretion of the trial judge. State v. Yough, 208 N.J. 385, 397 (2011). When a trial court has given an erroneous, misleading, or confusing instruction, the trial court must take all appropriate measures to assure that the instructions provide a clear and correct statement of the law and the consequences if a jury finds that the State has not established all essential elements of an offense.

V.

Defendants were tried together. Both were found guilty by the same jury, based on the same evidence, but received disparate results on appeal: McKinney's conviction for first-

28

degree robbery was reversed, and he was granted a new trial on that charge; Wardrick's conviction was affirmed. The disparate results can be explained in part by the failure to assign both defendants' appeals to the same part of the Appellate Division. The circumstances that permitted those appeals to be assigned to different panels have been addressed and are unlikely to recur.

The disparate results may also be explained by Wardrick's failure to argue, until he learned of the disposition of McKinney's appeal, that the first-degree robbery charge was erroneous and the attempt to correct it compounded the error. It was in the context of resolving Wardrick's motion for reconsideration that the Wardrick panel not only declined to invoke the law of the case doctrine, but also conducted a full review of the first-degree robbery charge, and concluded that any error was harmless.

The Wardrick panel correctly declined to apply the law of the case doctrine with respect to the asserted error in the first-degree robbery instruction. The panel's ruling is consistent with our recent opinion in K.P.S., supra, in which we held that due process dictates that each defendant is entitled to a full and fair review of any order, judgment, or verdict without regard to the disposition of an appeal filed by another defendant in the same proceeding who happened to receive a decision before his co-defendants. 221 N.J. at 278-79. We

29

would be remiss however if we did not note that the better practice would have been to transfer the Wardrick and McKinney appeals to the same part of the Appellate Division as soon as the appellate court recognized the calendar error.

With both appeals before the Court, we turn to the central issue of this appeal -- whether the first-degree robbery instruction was erroneous and, if so, whether that error requires a new trial. We conclude that the instruction on first-degree robbery as part of the conspiracy charge (count one) and the first-degree robbery charge (count two) erroneously referred to second-degree robbery. Compounding the error, the trial court did not provide an adequate curative instruction, and delivered confusing directions regarding the circumstances that required a guilty or not guilty verdict. A new trial is required for both defendants on the first-degree robbery count.

The trial record was replete with evidence that the men who entered Christopher's apartment and the man who confronted Melvin were armed. The parties therefore agreed among themselves, and the trial court concurred, that the jury would not receive an instruction that it could consider second-degree robbery as a lesser-included offense. Once the trial court agreed not to provide an instruction on the lesser-included offense of second-degree robbery, the court was obliged to fashion a charge that contained the essential elements of the

first-degree robbery offense with no mention of second-degree robbery. That is not what occurred.

Instead the trial court utilized the Model Jury Charge for first-degree robbery, Model Jury Charge (Criminal), "Robbery in the First Degree (N.J.S.A. 2C:15-1)" (2010). In providing the jury instruction on first-degree robbery on count one -- conspiracy to commit first-degree robbery -- and count two -- first-degree robbery of Christopher -- the court immediately introduced second-degree robbery to the jury. In discussing the facts that the jury must find to convict a defendant of conspiracy to commit first-degree robbery and first-degree robbery, the court provided the following charge:

> In order for you to find Jamil McKinney and Al-Tariq Wardrick guilty of robbery, the State is required to prove each of the following elements beyond a reasonable doubt: [t]hat Jamil McKinney and Al-Tariq Wardrick were in the course of committing a theft; that while in the course of committing that theft, Jamil McKinney and Al-Tariq Wardrick knowingly inflicted bodily injury or the use of force upon another; or B, threatened another with or purposely put him in fear of immediate bodily injury.

The trial court proceeded to define each element of first-degree robbery. The court then instructed the jury about the consequences of its various findings. The court stated:

> To summarize, if you find that the State has not proven beyond a reasonable doubt any one of the elements of the crime of robbery as I have defined that crime to you, then you

31

must find Jamil McKinney and Al-Tariq Wardrick not guilty.

If you find that the State has proven beyond a reasonable doubt that Jamil McKinney and Al-Tariq Wardrick committed the crime of robbery as I have defined the crime to you, but if you find that the State has not proven beyond a reasonable doubt that Jamil McKinney and Al-Tariq Wardrick were armed with or used or purposely threatened the immediate use of a deadly weapon at the time of the commission of the robbery, then you must find Jamil McKinney and Al-Tariq Wardrick guilty of robbery of the second degree.

If you find that the State has proven beyond a reasonable doubt that the defendant committed the crime of robbery and was armed with a deadly weapon or used or threats of the immediate use of the deadly weapon at the time of the commission of the robbery, then you must find Jamil McKinney and Al-Tariq Wardrick guilty of robbery in the first degree.

A section of this statute provides that []robbery is a crime -- hold on.

Counsel, can we have a side bar just a moment?

[(Emphasis added).]

Having recognized the erroneous instruction that would have permitted a verdict of guilty of second-degree robbery and having had a side-bar discussion with all counsel, the trial court stated:

Even as fast as I'm reading, I do know when something is not supposed to be in here, and so to just backtrack, I think I indicated that -- a portion of the charge that referred to robbery of the second degree. There is no charge of robbery of the second degree. So that part is omitted.

32

That curative instruction did not solve the problem and may have compounded it. To be sure, the trial court informed the jury that second-degree robbery was not before them. The trial court however had just informed the jury that it was to convict defendants of second-degree robbery if it found that the State had not proven that Wardrick and McKinney were armed. The trial court never informed the jury that it must find Wardrick and McKinney not guilty of first-degree robbery if it found that the State had not proven that Wardrick and McKinney were armed.

Then, in the course of the first-degree robbery charge regarding another victim (count six), the trial court informed the jury that it must find defendants not guilty if it found that the State did not prove each element of the offense. The court then launched into a discussion of the consequence of finding that the State had not proven that defendants were armed as if second-degree robbery was a lesser-included offense. The trial court stated:

> To summarize, if you find the State has not proven beyond a reasonable doubt any one of the elements of the crime of robbery as I have defined that crime to you, then you must find Jamil McKinney and Al-Tariq Wardrick not guilty.
>
> If you find the State has proven beyond a reasonable doubt that Jamil McKinney and/or Al-Tariq Wardrick committed the crime of robbery, as I have defined that crime to you, but if you find that the State has not proven beyond a reasonable doubt that Jamil McKinney

33

and Al-Tariq Wardrick was armed with or used or purposely threatened the immediate use of a deadly weapon at the time of the commission of a robbery, then <u>you must find Jamil McKinney and Al-Tariq Wardrick guilty of a -- again there is no charge of a second degree.</u>

If you find that the State has proven beyond a reasonable doubt that Jamil McKinney and/or Al-Tariq Wardrick committed the crime of robbery and was armed with a deadly weapon or used or threatened immediate use of a deadly weapon at the time of commission of a robbery, then you must find Jamil McKinney and Al-Tariq Wardrick guilty of robbery in the first degree.

[(Emphasis added).]

As we have just related, the trial court informed the jury of each element of the first-degree robbery offense. The court emphasized that the State was required to prove each element beyond a reasonable doubt. The trial court expressly informed the jury of the consequences if it found that the State had carried its burden as to each element, but became sidetracked when discussing the consequences of a finding that defendants were not armed by referring to second-degree robbery. Indeed, the trial court committed the same error twice and twice missed the opportunity to provide a clear and correct curative instruction that the jury must find defendants not guilty of first-degree robbery if it found that they were not armed. Simply stating that second-degree robbery was not before the jury provided insufficient guidance to the jury.

34

Neither defendant objected to the conspiracy to commit first-degree robbery or first-degree robbery charges. We therefore review the erroneous reference to second-degree robbery in the context of the plain error standard. See R. 2:10-2. We do not hesitate to conclude that the erroneous reference to second-degree robbery was "'[l]egal impropriety . . . prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" Jordan, supra, 147 N.J. at 422 (quoting State v. Hock, 54 N.J. 526, 538 (1969), cert. denied, 399 U.S. 930, 90 S. Ct. 2254, 26 L. Ed. 2d 797 (1970)); accord Camacho, supra, 218 N.J. at 554. The trial court's initial error demanded a more thorough and pointed curative instruction. Simply stating that "[t]here is no charge of robbery of the second degree . . . so that part is omitted" was insufficient. The confusion caused by the trial court introducing second-degree robbery into the charge and failing to adequately resolve that confusion had the clear capacity to permit defendants to be found guilty of first-degree robbery without a finding that they were armed.

We recognize that this Court has approved of jury instructions that simply state that the jury must find that the State has proven each element of the offense beyond a reasonable

35

doubt in order to find a defendant guilty.  See State v. Harris, 141 N.J. 525, 545 (1995).  The better practice, especially when one element is the particular subject of dispute -- and required in this instance -- is for the court specifically to inform the jury that it must find the defendant not guilty if it fails to find that element beyond a reasonable doubt.

VI.

In summary, we reiterate our holding in K.P.S. that the application of the law of the case doctrine in criminal appellate proceedings by co-defendants violates the due process right of each defendant to a full and fair review of each defendant's appeal.  The Wardrick panel properly declined to apply that doctrine when it did not defer to the analysis of the McKinney panel.

We also conclude that the trial court's erroneous reference to second-degree robbery in the course of the jury instruction on conspiracy to commit first-degree robbery and first-degree robbery had no place in the instruction.  Accordingly, the reference to second-degree robbery was error.  In addition, the efforts to cure the error were confusing and ineffective.  The jury was never expressly informed that it must find defendants not guilty of first-degree robbery if it found that defendants

36

were not armed.  Thus, the instruction constituted reversible error.[4]

VII.

The judgment of the Appellate Division in <u>State v. Wardrick</u> is reversed as to his conviction for first-degree robbery, and the matter is remanded to the trial court for proceedings consistent with this opinion.  The judgment is affirmed in all other respects.  The judgment of the Appellate Division in <u>State v. McKinney</u> is affirmed.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUDGE CUFF's opinion.

---

[4] Before this Court, each defendant urged reversal only of the first-degree robbery conviction (count two), even though the same error affected the conspiracy to commit first-degree robbery conviction (count one).  On remand, defendants may raise before the trial court the issue of the conspiracy charge and the appropriate remedy.

SUPREME COURT OF NEW JERSEY

NO.   A-74/75                    SEPTEMBER TERM 2013

ON CERTIFICATION TO     Appellate Division, Superior Court


STATE OF NEW JERSEY,

     Plaintiff-Appellant
     and Cross-Respondent,

              v.

JAMIL MCKINNEY, a/k/a JAMEEL
MCKINNEY, HAKIM MCKINNEY,
MALIK HOWARD and JAMIL
WARDRICK,

     Defendant-Respondent
     and Cross-Appellant.


DECIDED          August 27, 2015
                 Chief Justice Rabner                    PRESIDING

OPINION BY       Judge Cuff (temporarily assigned)

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM | |
| --- | --- | --- |
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

SUPREME COURT OF NEW JERSEY

NO.   __A-76__                          SEPTEMBER TERM 2013

ON CERTIFICATION TO ____Appellate Division, Superior Court____


STATE OF NEW JERSEY,

        Plaintiff-Respondent,

                v.

AL-TARIQ WARDRICK,

        Defendant-Appellant.


DECIDED _____August 27, 2015_____
                    Chief Justice Rabner                        PRESIDING
_____
OPINION BY _____Judge Cuff (temporarily assigned)_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM IN PART/ REVERSE IN PART/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |