**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2649-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAQUAN KEATON, a/k/a
DAY DAY, DA QUAN KEATON,
DAQUAN J. KEATON, and DAQUAN
S. KEATON,

    Defendant-Appellant.

_____

        Submitted December 18, 2017 – Decided August 16, 2018

        Before Judges Accurso and O'Connor.

        On appeal from Superior Court of New Jersey,
        Law Division, Hudson County, Indictment No.
        14-10-1567.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Stefan Van Jura, Deputy
        Public Defender II, of counsel and on the
        brief).

        Esther Suarez, Hudson County Prosecutor,
        attorney for respondent (Erin M. Campbell,
        Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Daquan Keaton was tried to a jury for the murder of Lamar Glover, on a theory of accomplice liability, and the shooting of Raymond Kozar.  He was tried alone.  The jury convicted him of knowing or purposeful murder, N.J.S.A. 2C:11-3(a)(1) and (2); two counts of second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a); one count of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1).  Defendant raises two issues as to his conviction on appeal, neither of which he raised to the trial court:

POINT I

THE MURDER CONVICTION MUST BE REVERSED BECAUSE THE GENERIC ACCOMPLICE LIABILITY INSTRUCTION: (1) FAILED TO RELATE ABSTRACT PRINCIPLES OF LIABILITY TO THE SPECIFIC FACTS OF THE CASE; (2) FAILED TO EXPRESSLY CORRECT THE STATE'S EGREGIOUS MISSTATEMENT OF THE LAW OF ACCOMPLICE LIABILITY; AND (3) FURTHER CONFUSED THE JURY BY ALLOWING IT TO FIND THAT DEFENDANT'S CONDUCT WAS PURPOSEFUL OR KNOWING BASED UPON THE ACTUAL KILLER'S USE OF A DEADLY WEAPON, YET WITHOUT A FINDING THAT DEFENDANT KNEW THE ACTUAL KILLER HAD THAT WEAPON.  (Not Raised Below)

POINT II

THE PROSECUTOR'S SUMMATION DENIED DEFENDANT DUE PROCESS AND A FAIR TRIAL BECAUSE THE REPEATED ASSERTIONS THAT SCOTT RECANTED DUE TO FEAR OBVIOUSLY IMPLIED THAT SCOTT FEARED RETRIBUTION BY DEFENDANT, WHICH FOUND NO BASIS IN THE RECORD.  (Not Raised Below)

We find no merit to either claim and, accordingly, affirm defendant's convictions.

Security video from a nearby carwash captured the shooting. The video depicts a group of men lounging in front of the Union Superette, a bodega in Jersey City, being scattered by gunfire. Only one shooter appears on the video, a black man with "dreads" armed with a gun. That gun was never recovered. Following the melee, Glover was dead from a gunshot wound to the head. Kozar had been shot in the leg. Ballistic tests confirmed two shooters.

The car wash owner heard the shots and saw a man run down the block and jump into the passenger seat of a black Lexus. He managed to catch a partial plate number before the car sped away. That led police to the owner, who claimed she had loaned the car to Sirheen Walker on the day of the shooting.

Police eventually recovered the gun that killed Glover. That discovery led indirectly to the State's star witness, Shanifah Scott, defendant's cousin.[1] Scott gave police two recorded statements in which she said she saw defendant with Walker, the father of her child, in the black Lexus at a park on

---

[1] Scott told police she had known defendant as her cousin since the fifth grade but was not sure if she was actually related to him.

the day of the murder. Walker was driving. Scott identified defendant as the man with dreads and the gun in the video of the shooting.

Scott also told police that Walker was at her home with several others twenty minutes or so after she saw him leave the park with defendant. She claimed Walker was nervous. He had a revolver, which he passed among several friends. According to Scott, defendant was not present. Scott refused to sign photographs in which she identified defendant, explaining she did not "want to be in the middle of this" and had "a child to live for." Scott, however, told police she was "a hundred percent" certain it was defendant in the video.

Police department surveillance video confirmed aspects of her statement, including the black Lexus having been at the park before the murder and that Walker and several friends were later on the street in the vicinity of her home. The murder weapon matched the description of the gun she said Walker had at her house.

Although police were certain that Walker and defendant committed the shooting together, and that Walker had killed Glover, they could not put Walker at the scene of the crime. Accordingly, defendant was tried alone as an accomplice to Glover's murder and a principal in Kozar's shooting. Scott

4

recanted her statements to the police before the jury, claiming she did not know defendant, and the statements were all lies. Following a Gross[2] hearing, the court admitted both statements pursuant to N.J.R.E. 803(a)(1), and they were played for the jury. The defense argued defendant was not the man in the video, noting he did not match the description Kozar gave of the man who shot him.[3] Defendant did not testify.

Turning first to the jury instructions, we note that none of defendant's arguments alleging error was raised to the trial court. Accordingly, he is not entitled to relief absent demonstration of "[l]egal impropriety in the charge prejudicially affecting [his] . . . substantial rights," which must be "sufficiently grievous" to justify our notice, convincing us "that of itself the error possessed a clear capacity to bring about an unjust result." State v. McKinney, 223 N.J. 475, 494 (2015) (first alteration in original; second alteration added) (quoting State v. Camacho, 218 N.J. 533, 554 (2014)); see also R. 1:7-2; R. 2:10-2. Applying that standard

---

[2] State v. Gross, 121 N.J. 1 (1990).

[3] In its summation, the State conceded defendant did not match Kozar's description of the man who shot him but suggested Kozar may have been describing Walker, who apparently did resemble Kozar's description.

here, we are convinced that none of defendant's arguments is meritorious or requires any extended comment.

Defendant claims there were "three interrelated problems with the accomplice liability charge as it pertains to murder." The first was the failure to tailor the charge to the facts of the case. Specifically, defendant claims the "the jury should have been advised" it had to "find some fact supporting the notion that defendant had a purpose to facilitate Glover's death," and that the failure to tailor the charge created "a problem like that posed by the intersection of accomplice liability and lesser-included offenses" in State v. Bielkiewicz, 267 N.J. Super. 520, 528 (App. Div. 1993) (quoting State v. Fair, 45 N.J. 77, 95 (1965)) (holding the "jury must be instructed that to find a defendant guilty of a crime under a theory of accomplice liability, it must find that he 'shared in the intent which is the crime's basic element, and at least indirectly participated in the commission of the criminal act'").

Second, defendant claims the prosecutor's inveighing the jury in closing not "to split the verdict," arguing "[e]ither [defendant] was there and he did these offenses or he wasn't," while not constituting "prosecutorial misconduct per se," "omitted the requirements that to be guilty as an accomplice,

one must have a purpose to facilitate the offense and must possess the criminal state of mind necessary to be proved against the principal" here, "a knowing or purposeful mens rea."

Defendant claims those two errors compounded the third, which was instructing the jury that if it was satisfied that another person, not charged, shot and killed Glover, it could "draw an inference from the weapon used, that is the gun, and from the manner and circumstances of the killing, as to defendant's purpose or knowledge." Defendant claims the court's failure to instruct the jury it had to first find that defendant "knew Walker was armed with a deadly weapon" made the instruction on the permissive inference a "critical error," in light of the "inadequate and misleading accomplice liability charge" and the prosecutor's closing.

We find no merit in those arguments. After the comments defendant cites as improper in the prosecutor's closing, the prosecutor told the jury that "one of the things that you're going to be asked also is to make a determination . . . that [defendant] shared the same intent that [Walker] or whomever did that day when they executed this hasty ambush." Thus judging the prosecutor's entire statement to the jury on accomplice liability, we find nothing misleading about it. See State v. Vasquez, 374 N.J. Super. 252, 262 (App. Div. 2005).

7                                                          A-2649-15T3

The facts of this case made the charge a straightforward one. The accomplice liability charge the court delivered on the murder count tracked closely the model charge and was accurate in all respects. Nothing more was required. Defendant opposed a charge on lesser-included offenses of murder and the court agreed the evidence did not support one. See N.J.S.A. 2C:1-8(e); State v. Alexander, 233 N.J. 132, 142 (2018). The jury was instructed specifically and repeatedly that in order to convict defendant of murder, it had to find he "possessed the criminal state of mind that is required to be proved against the person who actually committed the criminal act," a purposeful and knowing intent to cause Glover's death.

A Bielkiewicz instruction is not required where the evidence adduced at trial cannot support a theory that the defendant possessed a lesser mental state than the other participant. State v. Rue, 296 N.J. Super. 108, 115 (App. Div. 1996) ("The difference between this case and Bielkiewicz is that the evidence in that case could have supported a finding that defendant Bielkiewicz did not share [the principal's] homicidal state of mind."); see also State v. Norman, 151 N.J. 5, 38 (1997) ("There is simply no reasonable view of the evidence that would permit one to conclude that [the] defendants fired the

shots or aided in the firing of the shots with anything less than homicide in mind.").

The critical issue in this case was whether defendant was the man in the video with the gun. If he was, the evidence was overwhelming that defendant and the other shooter, presumably Walker, shared a murderous intent. The video shows the men in front of the Union Superette spring to their feet and begin to scatter before defendant enters the frame, strongly suggesting that shots had already been fired. Defendant is next seen chasing some of the men, gun in hand. Afterward, Glover is dead, shot both in the forearm and fatally in the head and Kozar has a gunshot wound to his leg.

There was no basis in the evidence to infer any difference in the shooters' mental states. They drove up to a group of men on a corner in Jersey City and started shooting. As the Court wrote in <u>Norman</u>, "[t]here is simply no reasonable view of the evidence that would permit one to conclude that defendant[] fired the shots or aided in the firing of the shots with anything less than homicide in mind." 151 N.J. at 38. We accordingly find no harm in the prosecutor's statement of the law in summation or the court's charge to the jury.

We also reject defendant's claim that prosecutorial misconduct deprived him of a fair trial. In the video of

Scott's statement to police, she marked and initialed various photographs presented to her by the detectives, but refused to sign photographs identifying defendant after viewing the video of the shooting, explaining she did not "want to be in the middle of this" and had "a child to live for."

The prosecutor referenced those remarks in his summation saying, "after watching a video of what they can do, I think that the best evidence of the fact that Shanifah Scott told the truth when she spoke to detectives . . . is her retraction on the stand before you last week."  Defendant claims that by insinuating Scott recanted her statements because she feared defendant, in the absence of any evidence he threatened her, the prosecutor introduced what was "[i]n essence . . . prohibited 'bad character' evidence that unfairly turned the jury against defendant," denying him a fair trial.  We disagree.

Defendant did not object to the admission of Scott's refusal to initial photographs of defendant.  The statement did not attribute any bad act to defendant, making it unlikely an objection would have been availing under N.J.R.E. 404(b).  Scott could have been simply expressing a more generalized fear of retaliation from others in the community.  See State v. Byrd, 198 N.J. 319, 340-41 (2009) (acknowledging "the climate of fear that prevails in some crime-infested neighborhoods" has

"undermined law enforcement's ability to prosecute even murder cases"). For the same reason, it is unlikely that Scott's statement would have been excluded under N.J.R.E. 403 even had defendant objected to its admission, which he did not. See State v. Covell, 157 N.J. 554, 568 (1999).

Further, in her closing, defense counsel repeatedly attacked Scott's credibility and impugned her unwillingness to initial photos she claimed were of defendant. She referred to Scott laughing during her statement "as if this was a joke" and repeatedly noted Scott "[n]ever signed and dated any photograph" of defendant. As to that point, counsel told the jury "don't get confused and think, oh, well, you know she was afraid." Counsel reminded the jury that Scott said "I'm not afraid, I got my brothers that will protect me." Counsel also asked the jury to recall when Scott "stood up here in the courtroom and she said, I lied, and the Prosecutor said, oh, do you not want to testify because you're afraid, she was, like, no."

Given there was no error in admitting Scott's refusal to initial the photos and the tenor of defense counsel's closing, we find the prosecutor's remarks in summation no more than fair comment on the evidence. See State v. Jackson, 211 N.J. 394, 409 (2012). In no event could we find the comments so egregious as to have deprived defendant of a fair trial. See State v.

11

Wakefield, 190 N.J. 397, 437-38 (2007), cert. denied, 552 U.S. 1146.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION