NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4012-14T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

MARK WILLIAMS,

 Defendant-Appellant.
_____________________________

 Submitted January 31, 2017 – Decided June 21, 2017

 Before Judges Ostrer, Leone and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Passaic County,
 Indictment No. 14-01-0052.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Kevin G. Byrnes, Designated
 Counsel, on the brief).

 Camelia M. Valdes, Passaic County Prosecutor,
 attorney for respondent (Tom Dominic Osadnik,
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM

 Defendant appeals from a judgment of conviction entered after

a jury trial for various controlled dangerous substance (CDS)

offenses and hindering apprehension, and claims the sentence
imposed was excessive. He also challenges a court order denying

his motion to suppress evidence. Based on our review of the record

in light of the applicable law, we affirm the court's denial of

the suppression motion, reverse defendant's conviction and

sentence for hindering apprehension, and affirm his remaining

convictions and sentence.

 I.

 On September 13, 2013, Juan Clavijo, a Passaic police

detective, conducted a drug surveillance operation in a high drug

trafficking area. Clavijo set up surveillance on the top floor

of a multi-family home and used binoculars to observe street-level

activity. Other officers were assigned to work as Clavijo's "arrest

team," meaning he would direct them to detain or arrest individuals

based upon his observations of any suspected drug activity.

 At about 11:50 a.m., Clavijo observed a man, later

identified as defendant, enter the driver's seat of a vehicle

parked on the street below his vantage point. Clavijo observed a

white male approach the passenger side of defendant's vehicle and

engage in a brief conversation with a black male standing on the

sidewalk. Clavijo knew the black male from previous

investigations.

 The black male spoke to defendant, who then lifted his

buttocks off of the vehicle seat, reached toward his lower back,

 2 A-4012-14T2
and pulled out a clear plastic bag containing a white item.

Defendant removed a white item from the bag and handed it to the

black male, who passed it to the white male. The white male then

handed the black male paper currency, and the black male handed

it to defendant. Clavijo observed defendant then return the plastic

bag to its original location. The white male left the location,

and Clavijo directed his arrest team to detain him. They were

unable to do so because they could not locate him.

 A few minutes later, Clavijo observed a man, later identified

as Calvin Pagan, approach the passenger side of defendant's

vehicle. Pagan spoke with another black male, who then spoke

directly to defendant. Clavijo saw defendant lift his buttocks off

of the driver's seat of the vehicle, reach into his buttocks area,

and retrieve a plastic bag containing a white item. Defendant

opened the bag, pulled out a white item and gave it to the black

male standing next to the vehicle. The black male handed the white

item to Pagan, who then gave the black male money. The black male

handed the money to defendant. Defendant then leaned back on the

driver's seat, lifted his buttocks off the seat, and reached into

his buttocks area. After defendant extracted his hands from his

buttocks area, he no longer held the plastic bag.

 Pagan left the area, and Clavijo directed his arrest team to

detain Pagan. Pursuant to Clavijo's instructions, detective Jason

 3 A-4012-14T2
Cancel followed Pagan in his unmarked police vehicle and observed

Pagan smoking from a glass cylinder, commonly referred to as a

crack pipe. As Cancel exited his vehicle, Pagan threw down the

crack pipe, and it shattered on the ground. Cancel detained Pagan

and discovered a metal rod, which Cancel described as a "push

rod," meaning a piece of drug paraphernalia used to push crack

cocaine into a crack pipe. Cancel arrested Pagan and arranged for

a marked patrol vehicle to bring Pagan to police headquarters.

 After Pagan left the street where Clavijo first observed him,

Clavijo saw a male later identified as Tomasz Cichon riding a

bike. At the same time, defendant performed a U-turn with his

vehicle and parked it on the opposite side of the street. Cichon

approached the driver's side of defendant's vehicle. After a brief

conversation between defendant and Cichon, defendant raised his

buttocks off the driver's seat, reached into his buttocks area,

and retrieved a plastic bag containing a white item. He took a

white item out of the bag, and gave it Cichon, who then handed

defendant money. Cichon placed the white item in a blue box that

he put in his pants pocket. Clavijo saw defendant raise his

buttocks off the seat, and reach into his buttocks area with the

plastic bag in his hand. After removing his hand from his buttocks

area, defendant no longer held the plastic bag.

 Cichon departed the area on his bicycle and Clavijo directed

 4 A-4012-14T2
the arrest team to detain him. Cancel stopped Cichon, who became

very nervous and said, "It's right there. It's right there."

Cancel searched Cichon and found a blue container containing .13

grams of crack cocaine in Cichon's right pocket, as well as cash

and a crack pipe.

 Meanwhile, moments after Cichon left defendant's vehicle,

defendant drove off. Clavijo directed his arrest team to stop

defendant. Officer Marco Clavijo stopped defendant's vehicle,

ordered defendant to exit the vehicle, and immediately placed

defendant under arrest. Defendant was handcuffed and searched by

Marco Clavijo, who recovered $502 from defendant's pocket.

Detectives arrived and Marco Clavijo had no further involvement

in the matter.

 Defendant was transported to police headquarters, where

detective Clavijo performed a strip search of defendant that did

not result in the recovery of any evidence. Clavijo applied for

and obtained a warrant for a search of defendant's anal cavity,

after which defendant was transported to a hospital.

 At the hospital, Clavijo presented a doctor with the warrant,

and Clavijo and five other detectives observed the search of

defendant's anal cavity. As the doctor put gloves on, defendant

stated he had to use the bathroom, and he wanted the detectives

removed from the area while the search was performed.

 5 A-4012-14T2
 The doctor instructed defendant to lay on his side, and after

he pulled down defendant's pants detectives observed a plastic bag

protruding from defendant's buttocks. The doctor then spread

defendant's buttocks and removed the bag. The bag contained a

white item, later determined to be cocaine. After the search,

defendant told the detectives that he thought they were "lazy,"

and would not get a search warrant for his anal cavity.

 Defendant was charged in an indictment with fifteen offenses,

but prior to trial the State dismissed seven of the charges.1 The

matter proceeded to trial on the following eight counts: third-

degree possession of CDS (cocaine), N.J.S.A. 2C:35-10(a)(1) (count

one); third-degree possession of CDS (cocaine), with intent to

distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(3) (count two);

second-degree possession of CDS (cocaine), with intent to

distribute within 500 feet of a public housing facility, N.J.S.A.

2C:35-7.1 and 2C:35-5(a) (count four); third-degree distribution

of CDS (cocaine), N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(3), to

Pagan (count five) and Cichon (count eight); second-degree

distribution of CDS (cocaine) within 500 feet of a public housing

facility, N.J.S.A. 2C:35-7.1 and 2C:35-5(a), to Pagan (count

seven) and Cichon (count ten); and third-degree hindering

1
 At the State's request, the court dismissed counts three, six,
nine, eleven, twelve, thirteen, and fourteen.

 6 A-4012-14T2
apprehension, prosecution, conviction or punishment, through the

concealment or destruction of evidence, N.J.S.A. 2C:29-3(b)(1)

(count fifteen).

 Prior to trial, defendant filed a motion to suppress the

evidence seized during the arrests of Pagan and Cichon, and the

cocaine recovered from defendant's anal cavity. The court

conducted an evidentiary hearing and denied defendant's motion.

 Following trial, the jury found defendant not guilty of the

charges in counts five and seven, which concerned the alleged

distribution of cocaine to Pagan, but found him guilty of the

remaining charges. At sentencing, the court granted the State's

motion for a mandatory extended term under N.J.S.A. 2C:43-6(f).

The court merged defendant's convictions for possession (count

one) and possession with intent to distribute (count two) with his

conviction for possession with intent to distribute within 500

feet of a public housing facility (count four), and imposed a ten

year sentence on count four with a five-year period of parole

ineligibility.

 The court further merged defendant's conviction for

distribution to Cichon (count eight) with his conviction for

distribution to Cichon within 500 feet of a public housing facility

(count ten), and sentenced defendant to a concurrent ten-year term

with five years of parole ineligibility on count ten. The court

 7 A-4012-14T2
also sentenced defendant to a consecutive four-year term for

hindering apprehension (count fifteen).

 This appeal followed. On appeal, defendant makes the

following arguments:

 POINT I

 [] DEFENDANT'S MOTION FOR A JUDGMENT OF
 ACQUITTAL ON THE CHARGE OF HINDERING
 APPREHENSION SHOULD HAVE BEEN GRANTED[.]

 POINT II

 [] DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS
 GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE
 UNITED STATES CONSTITUTION AND ART. I, PAR. I
 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED
 BY THE ADMISSION OF AN EXPERT OPINION BASED
 ON A HYPOTHETICAL THAT ASSUMED A FACT – THE
 DRUG POSSESSOR IS A DRUG DEALER – THAT WAS THE
 ULTIMATE DISPUTED ISSUE IN THE CASE[.]

 POINT III

 [] DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS
 GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE
 UNITED STATES CONSTITUTION AND ART. I, PAR. I
 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED
 BY THE TRIAL COURT'S FAILURE TO DEFINE ALL THE
 ELEMENTS OF THE HOUSING FACILITY DRUG-ZONE
 CRIME[.] (Not Raised Below)[.]

 POINT IV

 [] DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS
 GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE
 UNITED STATES CONSTITUTION AND ART. I, PAR. I
 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED
 BY THE TRIAL COURT'S FAILURE TO INSTRUCT THE
 JURORS ON ALL THE ESSENTIAL ELEMENTS OF
 DISTRIBUTION AND INTENT TO DISTRIBUTE CDS[.]
 (Not Raised Below)[.]

 8 A-4012-14T2
 POINT V

 [] DEFENDANT'S RIGHT TO BE FREE FROM
 UNREASONABLE SEARCHES AND SEIZURES AS
 GUARANTEEED BY THE FOURTH AMENDMENT TO THE
 UNITED STATES CONSTITUTION AND ART. I, PAR. 7
 OF THE NEW JERSEY CONSTITUION WAS VIOLATED BY
 THE UNLAWFUL SEARCH AND SEIZURE[.]

 A. THE STATE FAILED TO PROVE THAT
 THE SEARCH OF [] DEFENDANT AND CO-
 DEFENDANTS WERE INCIDENT TO A LAWFUL
 ARREST[.]

 B. THE TRIAL COURT'S CONCLUSION THAT
 THE STATE MET ITS BURDEN OF PROVING
 THE LEGALITY OF THE SEARCH AND
 SEIZURE IS A MIXED QUESTION OF LAW
 AND FACT SUBJECT TO PLENARY REVIEW
 ON APPEAL[.]

 POINT VI

 THE SENTENCE IS EXCESSIVE: THE TRIAL COURT
 IMPROPERLY BALANCED THE AGGRAVATING AND
 MITIGATING FACTORS[.]

 II.

 We first turn our attention to defendant's argument that the

court erred by denying his motion for acquittal on the hindering

apprehension charge. In count fifteen of the indictment, defendant

was charged with hindering his own apprehension, prosecution,

conviction, or punishment, in violation of N.J.S.A. 2C:29-3(b)(1),

"by placing an amount of cocaine in his buttocks." Defendant argues

he was entitled to a judgment of acquittal on the charge because

 9 A-4012-14T2
his conviction for concealing the cocaine in a body cavity violates

his constitutional rights against self-incrimination and

warrantless searches.

 At the close of the State's evidence, the court denied

defendant's motion for acquittal on all charges. The court found

the hindering charge was supported by defendant's concealment of

the cocaine in his anal cavity, and his statement at the hospital

about the presumed laziness of the detectives. Following the jury's

verdict, the court again denied defendant's motion for a judgment

of acquittal on the hindering charge, finding the evidence was

"ample in terms of concluding that [defendant] had concealed the

crack cocaine in his buttocks" in order "to hinder his detention

or his apprehension, the investigation of the crimes that occurred

as well as the prosecution of those crimes."

 "On a motion for judgment of acquittal, the governing test

is: whether the evidence viewed in its entirety, and giving the

State the benefit of all of its favorable testimony and all of the

favorable inferences which can reasonably be drawn therefrom, is

such that a jury could properly find beyond a reasonable doubt

that the defendant was guilty of the crime charged." State v.

D.A., 191 N.J. 158, 163 (2007); accord State v. Dekowski, 218 N.J.

596, 608 (2014); State v. Reyes, 50 N.J. 454, 458-59 (1967). No

distinction is made between direct and circumstantial evidence.

 10 A-4012-14T2
State v. Mayberry, 52 N.J. 413, 437 (1968), cert. denied, 393 U.S.

1043, 89 S. Ct. 673, 21 L. Ed. 2d 593 (1969); Reyes, supra, 50

N.J. at 458-59. Applying the same legal standard, we conduct a de

novo review of a trial court's ruling on a motion for acquittal.

Dekowski, supra, 218 N.J. at 608; State v. Williams, 218 N.J. 576,

593-94 (2014); State v. Moffa, 42 N.J. 258, 263 (1964).

 Under N.J.S.A. 2C:29-3(b)(1):

 b. A person commits an offense if, with
 purpose to hinder his own detention,
 apprehension, investigation, prosecution,
 conviction or punishment for an offense or
 violation . . . he:

 (1) Suppresses, by way of concealment or
 destruction, any evidence of the crime . . .
 which might aid in his discovery or
 apprehension or in the lodging of a charge
 against him . . . .

 To convict defendant of the offense, the State was required

to prove:

 (1) that defendant knew he[] could/might be
 charged with [an offense];

 (2) that [] defendant suppressed, by way of
 concealment or destruction, any evidence of
 the crime . . . which might aid in his
 discovery or apprehension or in the lodging
 of a charge against him; and

 (3) that [] defendant acted with purpose to
 hinder his[] own detention, apprehension,
 investigation, prosecution, conviction, or
 punishment.

 11 A-4012-14T2
 [Model Jury Charge (Criminal), "Hindering
 One's Own Apprehension or Prosecution" (May
 12, 2014).]

 In State v. Fuqua, 303 N.J. Super. 40 (App. Div. 1997), we

considered a defendant's constitutional challenge to the

application of N.J.S.A. 2C:29-3(b)(1). As the defendant sat in a

parked car, he was approached by the police. Id. at 42. The

defendant drove his car away and a police chase followed. Id. at

44. Following the defendant's apprehension, he was searched and

cocaine was found in his sock. Id. at 43. The defendant was charged

and convicted of eluding, possession of CDS, and hindering

apprehension by concealing the cocaine in his sock. Id. at 42. The

defendant challenged his conviction for hindering, arguing that

application of the hindering statute, N.J.S.A. 2C:39-3(b)(1),

violated his right against self-incrimination. Id. at 45.

 We did not decide the defendant's constitutional challenge

to the statute's application and instead "treat[ed] the issue as

one of statutory construction." Id. at 45-46. We determined that

the statute was applicable where it

 relates to the concealment or destruction of
 evidence of a person's completed crime, such
 as tampering with a crime scene, disposing of
 a murder weapon or the like . . . . Where,
 however, the crime is an ongoing possessory
 offense, such as defendant's possession of the
 cocaine in this case, we question the
 application of this statute.

 12 A-4012-14T2
 [Id. at 46.]

 We reasoned that to hold otherwise would result in a

requirement that illegal substances, weapons, and materials "be

carried in plain view or else the possessor could be convicted"

of hindering. Ibid. Finding that such an interpretation was

"difficult to fathom" and would "implicate the constitutional

prohibition against self-incrimination," we determined

 the language of the statute [applies] to
 evidence of crimes other than ongoing
 possessory crimes where the possession of the
 items or substance at that time is chargeable
 as a separate offense. The statute, where it
 speaks of concealment of "evidence of the
 crime" with the purpose of hindering the
 actor's apprehension, N.J.S.A. 2C:29-3b(1),
 is sensibly construed to refer to evidence of
 a completed criminal act, not a current
 possessory crime.

 [Id. at 46-47.]

 In State v. Sharpless, 314 N.J. Super. 440, 459-60 (App. Div.

1998), certif. denied, 157 N.J. 542 (1998), we reversed a

defendant's conviction for tampering with evidence in violation

of N.J.S.A. 2C:28-6. The evidence supporting the conviction showed

the defendant discarded twenty-three decks of heroin as he was

approached by the police prior to his arrest for possessory drug

offenses. Id. at 446-47.

 We construed the application of N.J.S.A. 2C:28-6 with the

same rationale underlying our decision in Fuqua. Id. at 459. We

 13 A-4012-14T2
recognized it was common for individuals possessing criminal

contraband to attempt to hide it from law enforcement and discard

it upon the approach of law enforcement. Ibid. We reasoned that

N.J.S.A. 2C:28-6 did not constitute a sufficiently clear statement

of legislative intent to permit convictions for a possessory

offense and tampering with evidence each time a defendant took an

action to hide or discard evidence of the possessory offense.

Ibid. We held:

 Instead, consistent with the court's
 interpretation of N.J.S.A. 2C:29-3b(1) in
 Fuqua, we construe the phrase "conceal[ment]"
 of "any article . . . with the purpose to
 impair its availability in [an investigation]"
 in N.J.S.A. 2C:28-6 to refer only to "evidence
 of a completed criminal act, not a current
 possessory crime." Under this analysis,
 defendant's abandonment of his drug supply
 occurred during the course of his ongoing
 possession of heroin with the intent to
 distribute and consequently did not constitute
 tampering with evidence.

 [Ibid. (citation omitted).]

 In State v. Mendez, 175 N.J. 201, 204-07 (2002), the defendant

was convicted of tampering with evidence where he discarded and

destroyed cocaine during a police pursuit. The Court approved of

the reasoning in Fuqua and Sharpless, but found they were factually

distinguishable because they did not involve the destruction of

evidence. Id. at 211. The Court held that "when a defendant

allegedly possesses and then destroys all or part of the specimen

 14 A-4012-14T2
of CDS, the Code [of Criminal Justice] permits the State to charge

that defendant with both drug possession and tampering with

physical evidence." Id. at 203. In other words, the Court

"interpret[ed] Sharpless as holding that the crime of tampering

with evidence of a possessory crime includes as a necessary element

the permanent alteration, loss, or destruction of the evidence

itself." Id. at 211-12. The Court explained that once the CDS was

destroyed, the possessory offense was "completed," and the

defendant had "taken a new step in completing a separate offense

involving destruction of physical evidence." Id. at 212.

 Here, defendant argues that his conviction for hindering

apprehension is inconsistent with the holding in Fuqua and the

reasoning in Sharpless. The State argues Fuqua and Sharpless

provide no refuge for defendant because they apply only when a

defendant's concealment of evidence is attendant to an ongoing

possessory offense, and that here defendant concealed the cocaine

to hinder his apprehension for the completed offense of drug

distribution to Cichon. Defendant asserts the evidence concealed

in his buttocks was not evidence of the distribution offense but

instead provided the basis for his conviction for possession and

possession with intent to distribute.

 Although the State now argues defendant's conviction was

proper if limited to hindering his completed distribution offense,

 15 A-4012-14T2
no such limit was imposed at trial. The indictment, which was

read to the jury, charged that defendant, with the purpose of

hindering apprehension "for an offense," suppressed by concealment

or destruction evidence which might aid in "a charge against him."

The trial court's charge instructed that the jury had to find

"that [d]efendant knew that he could or might be charged with the

offense of possession, possession with the intent to distribute,

or distribution of a controlled dangerous substance, namely

cocaine," that he suppressed by concealment or destruction

evidence "of the crime" which might aid in "a charge against him,"

and that he acted with the purpose of hindering his apprehension

"for the offense of possession, possession with intent to

distribute, or distribution of a controlled dangerous substance,

namely cocaine." Thus, the indictment and the jury instructions

permitted defendant to be convicted of hindering his apprehension

for his ongoing possessory offenses. The indictment and jury

instructions also permitted conviction of hindering even if the

jury found that defendant acted and intended only to conceal and

not destroy the cocaine, and that he concealed the evidence before

he completed the distribution offense or became aware of the police

presence.2

2
 The indictment and jury instructions also did not charge attempt

 16 A-4012-14T2
 We are mindful that our reasoning in Fuqua is limited to

evidence concealed as attendant to a possessory offense, Fuqua,

supra, 303 N.J. Super. at 46-47, and that defendant was found

guilty of the completed crime of distribution.3 Nevertheless, we

cannot ignore defendant was charged with and convicted of three

separate possessory offenses for the cocaine he concealed in his

buttocks following his distribution to Cichon, and there was no

showing defendant destroyed, or attempted to destroy, any of the

evidence. Thus, the indictment and the jury instructions permitted

the jury to convict defendant of hindering apprehension for those

"ongoing possessory offense[s]" by concealing the cocaine that was

the basis for those offenses.4 Under our interpretation of the

statute in Fuqua, that could not properly constitute a violation

of N.J.S.A. 2C:29-3(b)(1). Ibid.; Sharpless, supra, 314 N.J.

under N.J.S.A. 2C:5-1.
3
 There may be circumstances where the concealment of CDS following
the completion of a distribution offense would violate N.J.S.A.
2C:29-3(b)(1) but we need not speculate about them here.
4
 Indeed, in response to a hypothetical posed to the State's expert
witness on direct examination, the State's expert on narcotics and
distribution testified the cocaine concealed in defendant's
buttocks was "possessed" for distribution, and not for concealment
of any prior completed distribution. Moreover, the evidence showed
defendant placed the cocaine in his buttocks before he became
aware of any police presence, and there was no evidence he took
further action to conceal the cocaine at any time after he became
aware of the police presence at the scene.

 17 A-4012-14T2
Super. at 459. We therefore reverse defendant's conviction for

hindering apprehension in count fifteen, vacate the sentence

imposed and remand for entry of an amended judgment of conviction

on that charge.

 III.

 We next address defendant's argument that the court erred by

permitting Danyal Bachok, the State's expert witness in narcotics

and narcotics distribution,5 to offer opinions concerning

defendant's guilt on the distribution and possession with intent

to distribute charges. Prior to trial, defendant moved to bar

Bachok's testimony on the issue of whether defendant possessed the

cocaine for distribution. The court denied the motion and indicated

defendant could object on a question-by-question basis during

Bachok's trial testimony.

 At trial, the State posed a hypothetical question to Bachok

that included a detailed rendition of the facts related to

defendant's interactions with the three individuals as he sat in

his vehicle, the officer's observations of Pagan and Cichon

following their departure from the location of defendant's car,

and the arrest and search of defendant. The hypothetical referred

5
 Bachok was qualified as an expert in narcotics, narcotics
possession, distribution, packaging, and street value.

 18 A-4012-14T2
to defendant as the dealer, and the three individuals as buyers

one, two, and three.

 The hypothetical was posed without objection until the

following colloquy occurred:

 [PROSECUTOR]: [Bachok], assuming all those
 hypothetical facts, do you have an opinion as
 to why the crack cocaine recovered from
 between dealer's buttocks would be possessed?

 [BACHOK]: For distribution.

 [PROSECUTOR]: And what is the basis for your
 opinion?

 [BACHOK]: Based on the three transactions that
 were witnessed and also the denomination
 breakdown of the money and the absence –

 Defense counsel objected, arguing the prosecutor's use of the

terms dealer and buyer, and Bachok's testimony that there were

three transactions, constituted an impermissible expert opinion

on the ultimate issue that defendant engaged in three drug

transactions. The court overruled the objection, finding the

testimony was permissible under State v. Odom, 116 N.J. 65 (1989),

because Bachok did not directly comment on defendant's guilt but

instead "simply characterize[d] defendant's conduct based on the

facts in evidence in light of a specialized knowledge." See State

v. Nesbitt, 185 N.J. 504, 507 (2006) (noting Odom permitted the

State to pose a hypothetical question to a drug expert that

mirrored the facts of the case even if "expressed in terms of

 19 A-4012-14T2
ultimate issues of fact"); accord State v. Sowell, 213 N.J. 89,

99-103, 107 (2013); State v. McLean, 205 N.J. 438, 454-55 (2011);

State v. Reeds, 197 N.J. 280, 290-93 (2009).

 On appeal, defendant contends the court erred by overruling

his objection to Bachok's testimony, and renews his pretrial

argument that Bachok's testimony defendant possessed the cocaine

for distribution was inadmissible. We agree the court erred in

permitting the testimony but are convinced that under the

circumstances presented, it was not clearly capable of producing

an unjust result. R. 2:10-2.

 "A trial court's evidentiary rulings are entitled to

deference absent a showing of an abuse of discretion, i.e., there

has been a clear error of judgment." State v. Nantambu, 221 N.J.

390, 402 (2015) (quoting State v. Harris, 209 N.J. 431, 439

(2012)). We assess whether there was a clear error in judgment in

light of the applicable law. State v. Rinker, 446 N.J. Super. 347,

358 (2016).

 Expert testimony is permissible "[i]f scientific, technical,

or other specialized knowledge will assist the trier of fact to

understand the evidence or determine a fact in issue." N.J.R.E.

702. Expert testimony "otherwise admissible is not objectionable

because it embraces an ultimate issue to be decided by the trier

of fact." N.J.R.E. 704. Nevertheless, expert testimony is not

 20 A-4012-14T2
admissible unless it "concerns a subject matter beyond the ken of

an average juror." Reeds, supra, 197 N.J. at 290.

 In State v. Cain, 224 N.J. 410, 420-26 (2016), the Court

summarized and clarified the legal standards governing the

admissibility of expert testimony and the use of hypothetical

questions in drug cases. It explained that expert testimony is

permissible in drug cases because "the average juror is not

knowledgeable about the arcana of drug-distribution schemes." Id.

at 426. Thus, experts may testify concerning the indicia of a drug

distribution operation, including the manner in which drugs are

packaged and processed for distribution. Ibid. They are also

permitted to explain the significance of quantities and values of

drugs, the use of logos in drug packaging, the functions of drug

related paraphernalia, the roles played by individuals in drug

transactions, and "the various machinations used by drug dealers

to thwart detection." Ibid.

 However, the Court also held that expert testimony in drug

cases is subject to limitations. Id. at 426-27; State v. Simms,

224 N.J. 393, 403 (2016). An expert "should not express an opinion

on matters that fall within the ken of the average juror or offer

an opinion about the defendant's guilt," Cain, supra, 224 N.J. at

426 (citing Nesbitt, supra, 185 N.J. at 512-14), or "be used to

bolster a fact witnesses's 'testimony about straightforward but

 21 A-4012-14T2
disputed facts,'" id. at 426-27 (quoting McLean, supra, 205 N.J.

at 455). The Court reaffirmed what it declared many times in the

past: that expert testimony is unnecessary to explain to jurors

the obvious. Id. at 427; see also Sowell, supra, 213 N.J. at 100-

02; McClean, supra, 205 N.J. at 462-63.

 The Court also addressed the confusion caused by its

conflicting statements in Odom, supra, 116 N.J. 65, concerning

whether an expert in a drug case could properly offer an opinion

that "embraces ultimate issues that the jury must decide," such

as the defendant's state of mind. Id. at 421 (quoting Odom, supra,

116 N.J. at 79). The Court explained that experts are "no better

qualified than a juror to determine the defendant's state of mind

after the expert has given testimony of the peculiar

characteristics of drug distribution that are beyond the juror's

common understanding." Id. at 427. Such testimony "may be viewed

as an expert's quasi-pronouncement of guilt that intrudes on the

exclusive domain of the jury as factfinder, and may result in

impermissible bolstering of fact witnesses." Ibid. Thus, "[t]he

prejudice and potential confusion caused by such testimony

substantially outweighs any probative value it may possess." Id.

at 427-28. Accordingly, the Court concluded that "[g]oing forward,

in drug cases, an expert witness may not opine on the defendant's

state of mind. Whether a defendant possessed a controlled dangerous

 22 A-4012-14T2
substance with the intent to distribute is an ultimate issue of

fact to be decided by the jury." Id. at 429.

 The Cain Court also restricted the use of hypothetical

questions in drug cases. Hypothetical questions "should only be

used when necessary" and should not be used "[w]hen the evidence

is straightforward and the facts are not in dispute." Ibid. "To

the extent possible, questions posed to an expert witness in a

drug case should be compact and easy to understand and should not

take the form of a summation." Id. at 430.

 Measured against this standard,6 Bachok's challenged

testimony was clearly inadmissible insofar as it exceed Cain's

limitations. That testimony was unnecessary because the occurrence

of the transactions and defendant's purpose in possessing the

cocaine was not beyond the ken of the jurors. Bachok directly

expressed an opinion that defendant possessed the cocaine for the

purpose of distribution. Moreover, it was improper to employ the

monikers dealer and buyer in the hypothetical question because it

assumed a fact – that defendant was a drug dealer – that was

disputed and required resolution by the jury. See Simms, supra,

224 N.J. at 405. The use of the terms also permitted Bachok's

reference to the transactions to inferentially constitute an

6
 We have held that Cain has pipeline retroactivity. State v.
Green, 447 N.J. Super. 317, 328 (App. Div. 2016).

 23 A-4012-14T2
expression of opinion that defendant was engaged in drug

distribution, another issue within the exclusive province of the

jury.

 Defense counsel objected to Bachok's testimony concerning

defendant's purpose in possessing the cocaine, and the

transactions, and we therefore consider whether the court's error

in allowing the testimony was harmless. "An evidentiary error will

not be found 'harmless' if there is a reasonable doubt as to

whether the error contributed to the verdict." State v. J.R., 227

N.J. 393, 417 (2017). "The prospect that the error gave rise to

an unjust result 'must be real [and] sufficient to raise a

reasonable doubt as to whether [it] led the jury to a verdict it

otherwise might not have reached.'" Ibid. (quoting State v. Lazo,

209 N.J. 9, 26 (2012) (alterations in original)).

 Based on our review of the record, we are not convinced the

court's error creates reasonable doubt that the error contributed

to the verdict. The evidence concerning defendant's purpose in

possessing the cocaine was overwhelming. He was observed on three

occasions extracting a plastic bag from his buttocks area, taking

a white substance from it, and transferring the white substance

to third parties in exchange for money. Two of the third parties,

Pagan and Cichon, were immediately confronted by the police

following the exchanges with defendant, and in Pagan's case he was

 24 A-4012-14T2
observed using a crack pipe, and Cichon was found in possession

of cocaine in the same container he used to store the white item

he obtained from defendant. Defendant was arrested immediately

following the observed exchanges and a plastic bag containing

cocaine was found in defendant's buttocks, the precise location

where he had been seen placing a bag after each of the observed

transactions. Last, defendant was in possession of a large amount

of currency in denominations typically used in street level drug

transactions. In sum, Bachok's testimony added little to the

avalanche of evidence demonstrating defendant possessed the

cocaine with the intent to distribute it.

 We also discern no basis to conclude that Bachok's testimony

that defendant engaged in transactions creates a reasonable doubt

that admission of the testimony led the jury to a verdict it might

not have otherwise reached. In the first instance, defendant was

charged separately with distribution of cocaine to Pagan and

Cichon, but was found guilty only of distribution to Cichon. Thus,

the jury was not swayed by Bachok's testimony concerning purported

drug transactions and determined defendant's guilt on the

distribution charges based on other admissible evidence.

 The evidence supporting defendant's conviction for

distribution of cocaine to Cichon was overwhelming, independent

of Bachok's testimony that the exchange at the vehicle constituted

 25 A-4012-14T2
a drug transaction. In contrast, although Pagan was observed

engaging in an exchange of a white item for money with defendant

through an intermediary, when Pagan was stopped by law enforcement

he was not in possession of cocaine. As such, there was less

evidence Pagan actually purchased cocaine from defendant, and the

jury, apparently unpersuaded by Bachok's testimony concerning

purported transactions, found reasonable doubt that defendant

distributed cocaine to Pagan.

 We are therefore satisfied the court's error in permitting

Bachok's testimony concerning the transactions does not raise a

reasonable doubt that the jury would have reached a different

verdict. The evidence concerning the drug distribution to Cichon

was overwhelming, and the jury rejected Bachok's testimony as it

related to the charge of distribution to Pagan. Bachok also offered

other admissible testimony supporting the State's claim defendant

engaged in drug transactions, including the absence of drug

paraphernalia in the possession of street level drug dealers, the

amounts of drugs held for street level drug distribution, crack

cocaine pricing, and the denominations of currency typically used

in street level crack cocaine transactions.

 We therefore reject defendant's contention that his

convictions should be reversed based on the court's error in

permitting Bachok's testimony concerning defendant's purpose in

 26 A-4012-14T2
possessing the cocaine, and the transactions. See Sowell, supra,

213 N.J. at 107 (finding error in admission of drug expert's

testimony did not require reversal where there was otherwise

overwhelming evidence of the defendant's guilt).

 IV.

 Defendant next argues the court committed plain error in its

charge to the jury on the offense of distribution of CDS within

500 feet of a public housing facility, N.J.S.A. 2C:35-7.1.7

Defendant contends a determination of guilt under N.J.S.A. 2C:35-

7.1 requires a finding there was distribution of CDS within 500

feet of a public housing facility owned or leased by a local

housing authority in accordance with the local redevelopment and

housing law, and that the court erred by failing to define for the

jurors the requirements of the local redevelopment and housing

law. Defendant asserts the failure rendered the jury unable to

determine if the State proved all of the elements of the offense

beyond a reasonable doubt.

 Defendant's argument is without merit sufficient to warrant

discussion in a written opinion, R. 2:11-3(e)(2), beyond the

7
 Defendant does not argue the court erred in failing to give a
proper instruction on the charge of possession with intent to
distribute within 500 feet of a public housing facility, N.J.S.A.
2C:35-7.1, as alleged in count four, but our analysis of the merits
of defendant's assertion applies to that charge as well.

 27 A-4012-14T2
following brief comments. "Appropriate and proper charges to a

jury are essential for a fair trial." State v. Green, 86 N.J.

281, 287 (1981); State v. Baum, 224 N.J. 147, 158-59 (2016).

"Entailed is a comprehensible explanation of the questions that

the jury must determine, including the law of the case applicable

to the facts that the jury may find." Green, supra, 86 N.J. at

287-88.

 "This requirement of a charge on a fundamental matter is more

critical in a criminal case when a person's liberty is at stake."

Id. at 289. "Because of the importance of proper instructions to

the right of trial by jury, erroneous instructions on matters or

issues material to the jury's deliberations are presumed to be

reversible error." State v. Collier, 90 N.J. 117, 122-23 (1982);

accord State v. McKinney, 223 N.J. 475, 495-96 (2015); State v.

Afanador, 151 N.J. 41, 54 (1997).

 When reviewing an alleged error in the jury charge, "portions

of a charge alleged to be erroneous cannot be dealt with in

isolation but the charge should be examined as a whole to determine

its overall effect." State v. Wilbely, 63 N.J. 420, 422 (1973).

Thus, in "assessing the soundness of a jury instruction," we

consider how ordinary jurors would understand the instructions as

a whole, based upon the evidence before them. State v. Savage,

172 N.J. 374, 387 (2002).

 28 A-4012-14T2
 Here, the court's instructions tracked the relevant model

jury charges. See Model Jury Charge (Criminal), "Possession of a

Controlled Dangerous Substance with Intent to Distribute in

Proximity to Public Housing Facilities, Parks or Buildings" (March

26, 2001); Model Jury Charge (Criminal), "Distributing a

Controlled Substance: Proximity to Public Housing Facilities,

Parks or Buildings" (March 26, 2001). These instructions included

for each offense the requirement that the State establish that the

public housing facility be owned or leased to a local housing

authority in accordance with the local development and housing

law.

 Defendant does not contend that any of the charges failed to

identify an essential element of the offenses. Instead, he contends

the jurors were not instructed concerning whether the public

housing facility was owned or leased in accordance with the local

development and housing law. Such a charge was unnecessary here,

however, because defendant entered into a stipulation, which was

read to the jury, that the public housing facility at issue was

owned or leased by a public housing authority in accordance with

the local redevelopment law.

 Defendant did not object to the court's jury instructions at

trial. We therefore review the instructions for plain error, an

error clearly capable of producing an unjust result, and discern

 29 A-4012-14T2
none present here. R. 1:7-2; R. 2:10-2; McKinney, supra, 223 N.J.

at 494; Afanador, supra, 151 N.J. at 54.

 V.

 Defendant also argues the court's jury instruction on

distribution of CDS, N.J.S.A. 2C:35—5(a)(1) and N.J.S.A. 2C:35-

5(b)(3), was erroneous because it defined "distribution" to

include "the transfer, actual, constructive, or attempted, from

one person to another, of a controlled dangerous substance," but

failed to instruct the jury on the elements of attempt under

N.J.S.A. 2C:5-1 (emphasis added).8 The State argues the court

utilized the model jury instructions, the instructions as whole

were correct, and that any error in failing to define attempt was

harmless because defendant was not charged with attempted

distribution, the evidence showed only completed transactions, and

there was no argument made that defendant should be convicted

based on any alleged attempt to distribute CDS.

 Defendant did not object to the jury charge at trial and we

therefore review for plain error. R. 1:7-2; R. 2:10-2. The court

utilized the pertinent model jury charges, which define

distribution to include an attempt without elaborating on the

8
 The same definition was included in the court's charge on
possession of CDS with intent to distribute. Although defendant
does not expressly challenge the court's instruction on that
charge, our analysis of the issue is the same.

 30 A-4012-14T2
statutory elements of attempt. See, e.g., Model Jury Charge

(Criminal), "Possession of a Controlled Dangerous Substance With

Intent to Distribute" (June 8, 2015); Model Jury Charge (Criminal),

"Distribution of a Controlled Dangerous Substance" (Jan. 14,

2008). The charges derive their definition of "distribute" from

the definitions of "distribute" and "deliver," set forth in

N.J.S.A. 2C:35-2.

 The lack of a definition of attempt in these charges under

certain circumstances might constitute an error clearly capable

of producing an unjust result, but no such circumstances are

present here. There was nothing in the evidence or the arguments

to suggest this was a case of attempted distribution. Clavijo

testified only about completed exchanges and the State argued

defendant was guilty of distribution by making those exchanges.

Thus, even assuming "the judge's failure to charge the jury [on]

attempt was in error, this error was not sufficient to lead the

jury to a result it would not have otherwise reached." State v.

Belliard, 415 N.J. Super. 51, 74 (App. Div. 2010), certif. denied,

205 N.J. 81 (2011).

 VI.

 Defendant next argues the court erred by denying his pretrial

motion to suppress the evidence seized from Pagan, Cichon, and

himself. We disagree.

 31 A-4012-14T2
 Following an evidentiary hearing on defendant's motion the

court determined that the credible evidence established that based

on Juan Clavijo's observations of the exchanges and Cancel's

observations of Pagan smoking crack, there was probable cause for

the arrest and search of Pagan. The court found that based on

Clavijo's observations of Cichon there was probable cause to

suspect he had committed an offense thereby justifying his arrest

and search. The court last determined that based on the

observations of defendant and the results of the arrests of Pagan

and Clavijo there was probable cause for the arrest and search of

defendant by Marco Clavijo and subsequent search of defendant's

anal cavity following the issuance of the search warrant.

 "Appellate courts reviewing a grant or denial of a motion to

suppress must defer to the factual findings of the trial court so

long as those findings are supported by sufficient evidence in the

record." State v. Hubbard, 222 N.J. 249, 262 (2015). We

"disregard those findings only when a trial court's findings of

fact are clearly mistaken." Ibid. We owe no deference to the

trial court's legal conclusions, which we review de novo. Id. at

263.

 "The Fourth Amendment of the United States Constitution and

Article I, paragraph 7 of the New Jersey Constitution protect

citizens against unreasonable searches and seizures, and require

 32 A-4012-14T2
a showing of probable cause prior to the issuance of a warrant."

State v. Moore, 181 N.J. 40, 44 (2004). A warrantless search is

presumed invalid unless it fits within a recognized exception to

the warrant requirement. Ibid. The State bears the burden of

proof as to the legality of the arrest and subsequent search.

State v. O'Neal, 190 N.J. 601, 611 (2007); Moore, supra, 181 N.J.

at 44-45.

 Here, the court sustained the searches of Pagan and Cichon,

and the warrantless search of defendant based on the exception to

the warrant requirement for searches incident to a lawful arrest.

See Chimel v. California, 395 U.S. 752, 762-63, 89 S. Ct. 2034,

2040, 23 L. Ed. 2d 685, 694 (1969); Moore, supra, 181 N.J. at 45.

The court determined that the officers had probable cause to arrest

Pagan, Cichon, and defendant when the searches were conducted,

thus justifying the warrantless searches as incident to those

arrests.

 The standard for determining probable cause to arrest and to

search are the same. State v. Smith, 155 N.J. 83, 92 (1998).

Probable cause requires a well-grounded suspicion that a crime has

been or is being committed. Moore, supra, 181 N.J. at 45; State

v. Nishina, 175 N.J. 502, 515 (2003). In considering whether

there is probable cause, the court should consider the totality

of the circumstances and "make a practical, common sense

 33 A-4012-14T2
determination whether, given all of the circumstances, 'there is

a fair probability that contraband or evidence of a crime will be

found in a particular place.'" Moore, supra, 181 N.J. at 46

(quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317,

2332, 76 L. Ed. 2d 527, 544 (1983)). The circumstances to be

considered include the officers' experience, and whether the area

where the arrest occurred is a high-crime area. Id. at 46.

 In Moore, the Court found there was sufficient probable cause

to arrest the defendant where an experienced narcotics officer,

conducting surveillance in a high drug trafficking area, observed

the defendant exchange money for small unknown objects. Id. at 47;

cf. State v. Pineiro, 181 N.J. 13, 25 (2004) (finding an exchange

of a cigarette package in a high crime area established an

articulable suspicion of criminal activity justifying an

investigatory stop). Here, the court was presented with

circumstances providing a greater basis for a well-grounded

suspicion that defendant, Pagan, and Cichon had committed or were

committing crimes than those the Court found sufficient in Moore.

 Clavijo observed three suspected drug transactions, including

those between defendant and Pagan and Cichon. In each transaction

there was an exchange of currency for a white substance, which

defendant kept consistently concealed. Immediately following

Pagan's transaction, and prior to his arrest, he was observed

 34 A-4012-14T2
smoking from a crack pipe. The arrest of Cichon, and the recovery

of the cocaine from the box in which he placed the white item he

received from defendant, provided an additional circumstance

supporting the arrest of defendant. In sum, we are satisfied the

evidence amply supports the court's determination there was a

reasonable basis to suspect Pagan, Cichon, and defendant had

committed or were committing crimes, thereby justifying their

arrests and the searches incident to them.

 VII.

 Defendant last argues his aggregate sentence of fourteen

years with a five-year period of parole ineligibility is excessive.

As we have voided defendant's hindering conviction and its

consecutive four-year sentence, he is solely subject to the

aggregate ten-year sentence with a five-year period of parole

ineligibility on his drug convictions. We proceed to examine that

sentence.

 Defendant argues the court erred by finding aggravating

factors three, the risk that defendant will commit another offense,

N.J.S.A. 2C:44-1(a)(3), and nine, the need to deter the defendant

and others from violating the law, N.J.S.A. 2C:44-(a)(9).

Defendant also claims the court erred by failing to find mitigating

factors one, that defendant's conduct neither caused nor

threatened to cause serious harm, N.J.S.A. 2C:44-1(b)(1), and two,

 35 A-4012-14T2
that defendant did not contemplate that his conduct would cause

or threaten serious harm, N.J.S.A. 2C:44-1(b)(2). We review a

"trial court's 'sentencing determination under a deferential

standard of review.'" State v. Grate, 220 N.J. 317, 337 (2014)

(quoting State v. Lawless, 214 N.J. 594, 606 (2013)). We may "not

substitute [our] judgment for the judgment of the sentencing

court." Lawless, supra, 214 N.J. at 606. We must affirm a sentence

if: (1) the trial court followed the sentencing guidelines; (2)

its findings of fact and application of aggravating and mitigating

factors were based on competent, credible evidence in the record;

and (3) the application of the law to the facts does not "shock[]

the judicial conscience." State v. Bolvito, 217 N.J. 221, 228

(2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

 A sentencing court must find mitigating factors that are

supported by the record, and should accord them such weight as it

deems appropriate. Grate, supra, 220 N.J. at 338; State v. Case,

220 N.J. 49, 64-65 (2014); State v. Dalziel, 182 N.J. 494, 504-05

(2005). Defendant contends the court erred by failing to find

mitigating factors one and two, but did not request that the court

find those factors at the time of sentencing. See State v.

Blackmon, 202 N.J. 283, 297 (2010) ("Although there is more

discretion involved in identifying mitigating factors than in

addressing aggravating factors, those mitigating factors that are

 36 A-4012-14T2
suggested in the record, or are called to the court's attention,

ordinarily should be considered and either embraced or rejected

on the record.") (emphasis added); State v. Bieniek, 200 N.J. 601,

609 (2010) (encouraging trial courts to address each mitigating

factor raised by defendants). Even if defendant requested a finding

of mitigating factors one and two, "[d]istribution of cocaine can

be readily perceived to constitute conduct which causes and

threatens serious harm" and, thus, supported the court's decision

not to find those mitigating factors here. State v. Tarver, 272

N.J. Super. 414, 435 (App. Div. 1994).

 We are also satisfied the record supports the court's finding

of aggravating factors three and nine. We reject defendant's

contention the court erred in finding aggravating factor three

based solely upon his current convictions and prior record, thereby

double-counting aggravating factors. The court correctly

considered defendant's criminal history in determining his risk

of re-offending, Dalziel, supra, 182 N.J. at 502, and also based

its finding on defendant's history of unemployment and reliance

upon drug distribution for financial support.

 Defendant's assertion that aggravating factor nine "has lost

its value as a meaningful aggravating factor" lacks merit. Our

Supreme Court has noted that the need for deterrence is one of the

most important factors in sentencing. State v. Fuentes, 217 N.J.

 37 A-4012-14T2
57, 78-79 (2014). In Fuentes, the Court stated that in considering

aggravating factor nine a sentencing court must make a qualitative

assessment of the defendant's risk of recidivism in light of the

defendant's history, including but not limited to the defendant's

criminal history. Id. at 78. Here, the court fulfilled this

mandate, considering defendant's personal and criminal history in

determining the need for deterrence.

 We also are not persuaded by defendant's argument that his

sentences on his drug convictions are manifestly excessive. The

court properly considered defendant's prior criminal record and

the circumstances of the offenses for which he was convicted,

found and weighed the aggravating and mitigating factors, and

imposed a sentence in accordance with the applicable legal

principles that does not shock our judicial conscience. Bolvito,

supra, 217 N.J. at 228.

 Defendant's remaining arguments are without sufficient merit

to warrant discussion in a written opinion. R. 2:11-3(e)(2).

 Defendant's conviction for hindering apprehension under count

fifteen is reversed, and his sentence on that charge is vacated.

His remaining convictions and sentences are affirmed. The matter

is remanded for entry of an amended judgment of conviction

consistent with this opinion. We do not retain jurisdiction.

 38 A-4012-14T2