NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2572-14T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

MARK LOVETT,

 Defendant-Appellant.

________________________________

 Submitted November 7, 2016 – Decided June 27, 2017

 Before Judges Sabatino & Nugent.

 On appeal from Superior Court of New Jersey,
 Law Division, Essex County, Indictment No. 13-
 03-00526.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Jason A. Coe, Assistant Deputy
 Public Defender, of counsel and on the brief).

 Carolyn A. Murray, Acting Essex County
 Prosecutor, attorney for respondent (Camila
 Garces, Special Deputy Attorney General/
 Acting Assistant Prosecutor, of counsel and
 on the brief).

PER CURIAM

 Defendant Mark Lovett appeals from a judgment of conviction

for aggravated manslaughter, aggravated assault, and two weapons
offenses. For those crimes, a judge sentenced him to prison for

thirty-one years. On appeal, he argues:

 POINT I

 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY
 DENYING DEFENDANT'S REQUEST FOR A WADE HEARING
 BECAUSE THERE WAS AMPLE EVIDENCE IN THE RECORD
 THAT CALLED THE RELIABILITY OF THE EYEWITNESS
 IDENTIFICATION PROCEDURE USED INTO QUESTION.

 POINT II

 WHEN THE JURY POLL REVEALED THAT JURORS WERE
 NOT UNANIMOUS AS TO THE VERDICT, THE COURT
 COMMITTED REVERSIBLE ERROR BY FAILING TO
 INQUIRE AS TO WHETHER FURTHER DELIBERATIONS
 WOULD BE FRUITFUL AND FAILING TO INSTRUCT THE
 JURORS NOT TO ABANDON THEIR HONESTLY HELD
 VIEWS FOR THE SAKE OF REACHING A UNANIMOUS
 VERDICT.

 POINT III

 THE TRIAL COURT COMMITTED REVERSIBLE ERROR
 IN FAILING TO READ THE PORTION OF THE MODEL
 JURY CHARGE ON IDENTIFICATION WHICH DEALS
 WITH THE SUGGESTIVENESS OF SINGLE-SUSPECT
 IDENTIFICATION PROCEDURES. ([N]ot raised
 below).

 POINT IV

 THE AGGREGATE 31-YEAR PRISON SENTENCE IMPOSED
 WAS BOTH PROCEDURALLY DEFECTIVE AND MANIFESTLY
 EXCESSIVE FOR A DEFENDANT WITHOUT ANY PRIOR
 ADULT CONVICTIONS.

 For the reasons that follow, we affirm.

 In March 2013, an Essex County grand jury charged defendant

and co-defendant Shawn Watford in a six-count indictment with the

 2 A-2572-14T3
following crimes: first-degree conspiracy to commit murder,

N.J.S.A. 2C:5-2 and 2C:11-3(a)(1) and (2) (count one); first-

degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count two); two

counts of first-degree attempt to commit murder, N.J.S.A. 2C:5-1

and 2C:11-3(a)(1) and (2) (counts three and four); third-degree

unlawful possession of a weapon, N.J.S.A. 2C:39-5(c) (count five);

and second-degree possession of a weapon for an unlawful purpose,

N.J.S.A. 2C:39-4(a) (count six).

 Defendant moved for a Wade1 hearing, arguing the court should

exclude a witness's out-of-court identification because it

resulted from unduly suggestive circumstances. Analyzing

defendant's motion under Manson v. Brathwaite, 432 U.S. 98, 97 S.

Ct. 2243, 53 L. Ed. 2d 140 (1977) and State v. Madison, 109 N.J.

223 (1988), rather than the new standards of State v. Henderson,

208 N.J. 208 (2011), the trial court denied defendant's motion for

a hearing.

 The court granted the State's pre-trial motion to dismiss

count four, one of the attempted murder counts. The State tried

defendant separately from the co-defendant. At the conclusion of

defendant's trial, the jury found him not guilty of conspiracy to

commit murder (count one), but guilty of the lesser-included

1
 United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed.
2d 1149 (1967).

 3 A-2572-14T3
offense of aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1) (count

two). On count three, the jury found defendant not guilty of

attempted murder, but guilty of the lesser-included offense of

third-degree aggravated assault, N.J.S.A. 2C:12-(b)(7). The jury

found defendant guilty of the two weapons offenses.

 For purposes of sentencing, the court merged count six,

possession of a weapon for an unlawful purpose, with counts two

and three, aggravated manslaughter and aggravated assault. The

court sentenced defendant on count two to a twenty-seven-year

prison term subject to the No Early Release Act (NERA), N.J.S.A.

2C:43-7.2. The court imposed a four-year prison term with two

years of parole ineligibility on count three, consecutive to the

sentence imposed on count two. On count five, unlawful possession

of a weapon, the court imposed a five-year prison term with three

years of parole ineligibility concurrent to the sentence imposed

on count three.2 This appeal followed.

 The State developed the following proofs at trial. Shortly

after midnight on May 27, 2012, fifteen or twenty people were

2
 We note counts two and three were not listed in the "final
charges" section of the judgment of conviction. Counts two and
three were, however, listed in the judgment of conviction's
"sentencing statement" along with the sentences to be imposed on
those counts. The judgment of conviction also improperly lists
defendant's aggregate custodial term as twenty-seven years rather
than the correctly computed figure of thirty-one years.

 4 A-2572-14T3
socializing in front of a home on Taylor Street, between Hickory

and Center streets, in Orange. A light-colored Audi turned from

Hickory Street onto Taylor Street and slowed as it passed the

crowd. The Audi's front-seat passenger fired multiple bullets

into the crowd. One bullet struck a victim in the chest, and he

died as the result of the gunshot wound. Another bullet grazed

the left leg and passed through the right leg of a second victim,

who was seated in a car.

 Law enforcement officers photographed and processed the crime

scene. Officers found ten shell casings that had been ejected

from a semi-automatic weapon, but found no evidence, such as

fingerprints, to aid them in identifying the perpetrators.

Officers also located a surveillance camera used by a nearby

business. Although the camera captured the Audi turning from

Hickory Street onto Taylor Street, authorities could identify

neither the car's occupants nor its license plate number from the

video recording.

 The State proved defendant and co-defendant were the

perpetrators through the testimony of a witness who identified co-

defendant as the Audi's driver, and through the prior statement

of another witness, decedent's friend, who had once identified co-

defendant and defendant to law enforcement as the driver and

 5 A-2572-14T3
shooter.3 The first witness, who had observed the shooting from

the third floor of a neighboring house, could not identify the

passenger who fired the shots. This witness was looking through

the window because the noise from the crowd was keeping him awake.

He saw the Audi slow down as it neared the crowd, and then he

heard "boom, boom, boom, boom." He saw fire coming from the car

as people on the sidewalk fled or ducked behind parked cars.

 The driver's side window was down. The witness had seen the

driver previously in Orange, and described his hair, moustache,

and sideburns. Within the next two weeks, the witness gave a

statement to authorities and identified a photo of co-defendant

as the Audi's driver. The witness could not identify the car's

other occupant, who he believed to be the shooter. The witness

had seen "flames" coming "[f]rom the right-hand side of the front

window."

 The other witness, decedent's friend, had given a video-

recorded, sworn statement to police two days after the homicide.

According to the statement, he was talking to decedent when "a

silver or beige Audi hit the corner hard and it slowed down by us

and started shooting." When asked by detectives if he saw who was

3
 A third witness, who had been at the scene, had also given a
statement to police identifying defendant as the shooter and co-
defendant as the Audi's driver. This third witness refused to
testify at trial, and the court held him in contempt.

 6 A-2572-14T3
shooting the gun, decedent's friend said it was defendant, "Mark

Lovett." The friend saw defendant sticking his hand out the Audi's

window firing a gun. Decedent's friend had known defendant for

approximately six or seven years, since seventh grade, and he had

seen him recently at a deli and liquor store. According to

decedent's friend, defendant, also known as "Spitter," was

"always" at the deli. The friend also had known co-defendant,

nicknamed "Spot," for approximately four years. Decedent's friend

identified Spot as the Audi's driver. Decedent's friend said in

his statement he "got a very good look" at defendant and co-

defendant.

 During the friend's interview, after he identified defendant

and explained how he knew him, detectives showed the friend a

single photograph of defendant. The friend identified defendant

as Spitter, Mark Lovett. Decedent's friend also identified co-

defendant from an array of six photographs.

 Decedent's friend recanted at trial, asserting the men in the

Audi wore black masks and he could identify neither of them.

Following a Gross4 hearing the trial court determined the friend's

video-recorded statement was reliable and admissible. The State

played a redacted version for the jury.

4
 State v. Gross, 121 N.J. 1 (1990).

 7 A-2572-14T3
 As previously noted, the jury found defendant guilty of

aggravated manslaughter, aggravated assault, and two weapons

offenses; and the court sentenced defendant to an aggregate thirty-

one year custodial term.

 On appeal, defendant first challenges the trial court's

denial of his motion for a Wade hearing. He argues that because

police showed decedent's friend a single photograph — an inherently

suggestive procedure — the trial court should have conducted a

hearing to determine whether the friend's identification was

sufficiently reliable to satisfy due process. Defendant also

argues the trial court wrongly analyzed the identification issue

under Manson and Madison rather than Henderson. We find

defendant's arguments unavailing. Under either a Manson-Madison

or Henderson analysis, defendant failed to make the showing

necessary to entitle him to a hearing.

 Here, the officers did not show decedent's friend a

photograph, thereby prompting the friend to identify defendant;

rather, the friend identified defendant, thereby prompting the

officers to obtain his photograph. The friend's identification

of defendant and co-defendant had been made and was complete before

the officers showed the friend defendant's photograph. The friend

had known defendant for six or seven years, and he had seen him

in middle school and in the community. Defendant could not

 8 A-2572-14T3
demonstrate when he filed his Wade motion, nor can he demonstrate

now, that the officers showing the witness defendant's photograph

after he identified defendant had any likelihood of influencing

his identification.

 Under the Manson-Madison analytical framework, a defendant

must first "proffer . . . some evidence of impermissible

suggestiveness" to be entitled to a Wade hearing. State v.

Rodriquez, 264 N.J. Super. 261, 269 (App. Div. 1993) (citations

omitted), aff'd o.b., 135 N.J. 3 (1994). A defendant cannot

satisfy this requirement by isolating one of the totality of

circumstances surrounding an identification and ignoring all

others. In cases such as this, where a witness has positively

identified a perpetrator who he has known for six or seven years,

has seen in middle school, and has seen in the community, police

later showing the witness a photograph of that perpetrator does

not constitute an impermissibly suggestive procedure.

 Defendant fares no better under Henderson's analytical

framework. Under Henderson, "to obtain a pretrial hearing, a

defendant has the initial burden of showing some evidence of

suggestiveness that could lead to a mistaken identification."

Supra, 208 N.J. at 288. Here, defendant failed to demonstrate how

showing his photograph to a witness who had already positively

identified him as the shooter realistically constituted "some

 9 A-2572-14T3
evidence of suggestiveness that could lead to a mistaken

identification." Ibid.

 In short, the trial court correctly determined defendant had

not made the required initial showing entitling him to a Wade

hearing.

 Next, we address defendant's contention the trial court

committed reversible error by failing to instruct the jury on

show-up identifications, Model Jury Charges (Criminal),

"Identification: Out-of-Court Identification Only" (2012), even

though defendant did not request the charge.

 "If the defendant does not object to the charge at the time

it is given, there is a presumption that the charge was not error

and was unlikely to prejudice the defendant's case." State v.

Singleton, 211 N.J. 157, 182 (2012). Here, defendant did not

object to the court omitting the show-up identification

instruction. Because defendant did not object at trial, we review

the charge for plain error. R. 1:7-2; R. 2:10-2; State v.

McKinney, 223 N.J. 475, 494 (2015). Plain error in this context

is "[l]egal impropriety in the charge prejudicially affecting the

substantial rights of the defendant sufficiently grievous to

justify notice by the reviewing court and to convince the court

that of itself the error possessed a clear capacity to bring about

an unjust result." State v. Adams, 194 N.J. 186, 207 (2008)

 10 A-2572-14T3
(alteration in original) (quoting State v. Jordan, 147 N.J. 409,

422 (1997)).

 For the same reasons we expressed in rejecting defendant's

argument that he was entitled to a Wade hearing, we conclude that

even if the trial judge erred by omitting the show-up

identification charge, the omission did not have a clear capacity

to bring about an unjust result. Ibid. As previously pointed

out, the witness had identified defendant before detectives showed

him the photograph. Under those circumstances, the court's

omission of an instruction that defendant did not request, and

that had little if any bearing on the witness's identification,

was at most harmless error. R. 2:10-2.

 We also reject defendant's argument the court erred by failing

to make an appropriate inquiry of the jury and failing to give an

instruction to the jury when they revealed they were not unanimous

as to the verdict. Defendant raises this argument for the first

time on appeal.

 These are the circumstances concerning the jury's verdict.

The jury began deliberating on a Thursday at 12:16 p.m. and went

to lunch from 12:56 p.m. to 2:10 p.m. The jury ceased

deliberations at 4:01 p.m. and returned the following Tuesday.

 The jury deliberated from 9:28 a.m. to 1:06 p.m. when they

announced they had reached a verdict. After the foreperson

 11 A-2572-14T3
announced the verdict, the court began to poll the jury. Juror

number six initially whispered "yes," indicating agreement with

the verdict, but then whispered "no" when the court repeated the

inquiry. Following a sidebar discussion with counsel, the court

stated: "All right. The record will reflect we've been waiting

here for over a minute for Juror Number 6 to respond. He is not

responding. The verdict is not unanimous. I'm going to send

them back in for further deliberations . . . ."

 Defendant made a motion for a mistrial, which the court

denied. Defendant did not request any further inquiry or

instruction. After breaking for lunch from 1:19 p.m. to 2:25

p.m., the jury resumed deliberations. At 3:21 p.m., the jury sent

a note stating they were again ready "to report our unanimous

verdict." The jury then returned a unanimous verdict.

 Defendant now argues the court should have inquired if further

deliberations would have likely resulted in a verdict, and should

have instructed the jury on further deliberations in accordance

with Model Jury Charges, (Criminal), "Judge's Instructions on

Further Jury Deliberations" (2013). Because defendant did not

request either further inquiry or an instruction, we review the

omissions for plain error. R. 2:10-2; McKinney, supra, 223 N.J.

at 494.

 Rule 1:8-10 governs situations such as this. The rule states:

 12 A-2572-14T3
 Before the verdict is recorded, the jury shall
 be polled at the request of any party or upon
 the court's motion . . . . If the poll
 discloses that there is not unanimous
 concurrence in a criminal action . . . the
 jury may be directed to retire for further
 deliberations or discharged.

While it is appropriate "to inquire of the jury whether further

deliberations will likely result in a verdict . . . it is not

always necessary for the trial court to do so." State v. Figueroa,

190 N.J. 219, 240 (2007) (citations omitted). A trial court also

has discretion "to decide whether repeating [the jury charge on

further deliberations] is appropriate when a jury . . . is unable

to agree." Id. at 235.

 Here, no juror announced the jury was deadlocked, nor did

juror number six indicate in any way a verdict could not be

reached. Moreover, the court had instructed the jury near the end

of its charge:

 It is your duty as jurors to consult with
 one another and deliberate with a view to
 reaching an agreement, if you can do so
 without doing violence to your individual
 judgment. Each of you must decide the case
 for yourself, but do so only after impartial
 consideration of the evidence with your fellow
 jurors. In the course of your deliberations,
 do not hesitate to re-examine your own views
 and change your opinion if convinced it is
 erroneous, but do not surrender your honest
 conviction as to the weight or effect of
 evidence solely because of the opinion of your
 fellow jurors or for the mere purposes of

 13 A-2572-14T3
 returning a verdict. You are not partisans.
 You are judges . . . of the facts.

 In view of this instruction, defendant's failure to request

either further inquiry or further instruction after juror number

six was polled, and the absence of any indication the jury had

reached a deadlock, we cannot conclude the trial court's omissions

require reversal. The omissions did not amount to "[l]egal

impropriety in the charge prejudicially affecting the substantial

rights of the defendant sufficiently grievous to justify notice

by the reviewing court and to convince the court that of itself

the error possessed a clear capacity to bring about an unjust

result." Adams, supra, 194 N.J. at 207 (alteration in original).

 Lastly, defendant challenges his sentence as excessive. We

may not substitute our judgment for that of the trial court's when

reviewing a sentencing decision. State v. Johnson, 118 N.J. 10,

15 (1990) (citation omitted). "[A]s long as the trial court

properly identifie[d] and balance[d] aggravating and mitigating

factors . . . supported by competent credible evidence in the

record[,]" we must affirm even if we would have reached a different

result. State v. O'Donnell, 117 N.J. 210, 215 (1989).

 Here, the court based its finding of aggravating and

mitigating factors on defendant's background and juvenile record.

The court reasonably balanced the factors, and concluded the

 14 A-2572-14T3
aggravating factors preponderated. Further, defendant's sentence

is not manifestly excessive, but falls within the range of

available sentences for the crimes of which he was convicted.

Finally, the court conducted an adequate Yarbough5 analysis and

its imposition of consecutive terms was proper.

 We affirm defendant's convictions and sentence, but remand

to the trial court to correct the judgment of conviction to include

the correct final charges and aggregate sentence. We do not retain

jurisdiction.

5
 State v. Yarbough, 100 N.J. 627 (1985), cert. denied, 475 U.S.
1014, 106 S. Ct. 1193, 89 L. Ed. 2d 308 (1986).

 15 A-2572-14T3